KLIEBERT, Chief Judge.
This is a worker’s compensation case arising out of an accident which occurred on January 26, 1990, wherein the plaintiff seeks an award for total permanent disability.
Trial was held on December 10, 1991 following which judgment was rendered on April 1, 1992 as follows:
1. In favor of plaintiff and against WHC Contractors, Inc. and Insurance Company of North America for temporary total disability benefits from January 26, 1990 through September 1, 1990 at the maximum rate with interest,
2. Holding defendants liable for all reasonable and necessary medical expenses related to the accident incurred before May 1, 1991,
3. Awarding penalties in the amount of 15% on all temporary total benefits awarded,
4. Granting attorney’s fees to plaintiff’s attorney in the amount of $1500.00, and
5. Denying with prejudice all compensation benefits to plaintiff beyond September 1, 1990.
On April 24, 1992 plaintiff executed a receipt of the sum of $12,844.37 representing the full amount then due under the judgment but reserving his right to an appeal, which he has now perfected. Assigned as error are failure on the part of the trial court to (1) hold that the accident did not aggravate a pre-existing injury; (2) extend medical benefits beyond May 1, 1991, and (3) award supplemental earnings benefits after September 1, 1990.
The defendants have answered the appeal asserting that the judgment as satisfied was proper and that, therefore, the appeal should be dismissed. Alternatively, it is urged that should the appellate court extend the compensation benefits awarded beyond September 1, 1990 or the medical benefits awarded beyond May 1, 1991, the defendants would be entitled to an offset for social security benefits being paid to and received by the plaintiff.
It is admitted that the evidence is undisputed that the plaintiff sustained a work- *1198 related injury on September 26, 1990. The facts of the accident are clear and undisputed. Plaintiff was painting a pipe when another pipe which was suspended on a rack above him fell, striking plaintiff in the head. He received a laceration of the scalp and was treated briefly by a general practice doctor and a chiropractor. After approximately two weeks, plaintiff requested the chiropractor to discharge him to return to work out of economic necessity.
Plaintiff had a pre-existing neurological condition known as spasmodic torticollis which featured an involuntary turning of the neck musculature and an inversion of the right foot. He was first diagnosed with this condition in 1985 and had been managed by Dr. William Martin on medication. Between his diagnosis in 1985 and the accident in 1990, plaintiffs condition remained stable and he was able to work and perform a full range of activities.
Following the accident, plaintiff suffered a severe aggravation of his pre-existing spasmodic torticollis condition; the head injury produced a tremor which had not been present before. Dr. Martin felt that plaintiff was suffering from a post-concussion syndrome which aggravated the symptoms of the pre-existing condition. As a result of the concussion plaintiff suffered from severe and frequent headaches.
Dr. Martin felt that the post-concussion syndrome was disabling from January 26, 1990 until September 1990. Although the headaches and aggravation of pre-existing symptoms subsided gradually, plaintiff was left with “a little more dystonia in the neck and foot.” As the headaches resolved, the tremor and dystonia improved but never returned to their pre-accident state. Although Mr. Peveto was able to perform work as a painter before the accident with his condition, Dr. Martin stated that he could not return to heavy construction-type work. Dr. Martin believed that plaintiff would now be at an increased risk of injury if he returned to the same type of work he was performing before the accident. He cited restrictions including: l)-no fine visual inspection (because of the permanent turning of the neck muscles), 2) lack of motor control, 3) learning disability and 4) speech impediment.
The trial judge rendered written reasons for her judgment and, in concluding that the plaintiff was disabled until September 1, 1990, relied on the testimony of Dr. Martin referred to above. She likewise relied on this doctor’s testimony in concluding that the plaintiffs present condition was not more probably than not related to the accident and that, in fact, his condition could have progressed to its present point without the accident having occurred. The following testimony is on point:
“Q. But, again, as to the dystonia that he exhibits today and the torticollis that he exhibits today, you do not have an opinion as to the blow to the head being responsible for that condition?
A. All I can say is that he has become slightly worse since 1988. Whether this is the natural course of the disease, whether he would have become slightly worse anyway, or whether this was aggravated or speeded up by the blow to the head, I have no way of determining that, I can’t say.” (Martin depo. pp. 33, 34)
The above testimony makes it clear that Dr. Martin could not state, even to a reasonable possibility, as to whether the accident aggravated any pre-existing conditions of the plaintiff. Despite repeated questioning as to this issue, Dr. Martin was clear in his testimony that he could not state whether the accident, in any way, even the slightest, aggravated the pre-ex-isting conditions.
“Q. And then when you saw Mr. Peveto in February of 1990, his presentation and his symptoms were dramatically different, is that correct?
A. He was much worse at that time I think, mainly, because of his post-concussion syndrome. That was aggravating the dystonia. Obviously, the dystonia-any dystonic process is made worse by stress anxiety of any type, whether it be physical or mental, and I think some of the aggravation that came with it was due to the post-concussion syndrome. (Martin depo. pp. 41, 42)
[[Image here]]
*1199 Q. What you are asking is over long-term, has there been any change and, basically, it seems to be slightly worse over the long-term than it was five years ago. And as I said before, I can’t tell you why that is.” (Martin depo. p. 41)
The trial court’s judgment granting temporary total benefits from January, 1990 through September, 1990, and no other disability benefits, is supported when Dr. Martin’s testimony concerning this issue is reviewed:
“Q. All right, so is it fair to say that certainly the post-concussion syndrome symptoms were disabling, roughly, from January through September of 1990?
A. To September, with some mild residual from September to January.
Q. And that the disability that you now refer to Mr. Peveto is more attributable to the dystonia syndrome and the torticollis?
A. That’s right. I think the post-concussion syndrome has cleared and his current disability is related to his muscle disorder.” (Emphasis Supplied) (Martin depo. p. 50)
Thus, the trial court had a highly reasonable factual basis for awarding only temporary total disability benefits from January through September, 1990 and for refusing to award any further disability benefits.
Counsel for appellant somehow seems to derive comfort from the holding in Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985). An examination of that authority reveals that the court relied on medical testimony that there was a causal connection between the plaintiff’s accident and his prior condition. Such is not the case here.
The judgment appealed from is correct and is, therefore, affirmed.
AFFIRMED.