630 So.2d 689 (1994)
David PEVETO
v.
WHC CONTRACTORS, et al.
No. 93-C-1402.
Supreme Court of Louisiana.
January 14, 1994.
*690 William R. Mustian, III, Stanga & Mustian, Metairie, for applicant.
Robert J. Young, III, Young & Richaud, New Orleans, for respondent.
MARCUS, Justice.[*]
David Peveto, an employee of WHC Contractors, suffered from neurological disorders, specifically, spasmodic torticollis, which caused an involuntary turning of the head and neck, and dystonia in the right foot. His condition remained stable prior to January 26, 1990. On that date, Peveto was struck on the head by a metal pipe which fell as he painted another pipe. As a result of this work injury, he suffered from severe headaches and an aggravation of the spasmodic torticollis and the dystonia in his foot, including a tremor which had not been present previously.
After having been denied disability benefits and medical expenses by his employer's insurer, Insurance Company of North America, Peveto filed a claim with the Office of Workers' Compensation Administration seeking compensation benefits, as well as penalties and attorney fees. The hearing officer awarded plaintiff temporary total disability payments from January 26, 1990 until September *691 1, 1990; reimbursement of reasonable and necessary medical expenses related to the accident and incurred on or before May 1, 1991; and penalties and attorney fees. The court of appeal affirmed.[1] Plaintiff applied to this court alleging that the courts below erred in finding no causal link between the work injury and his continuing disability and in denying his claim for supplemental earnings benefits. We granted certiorari to review the correctness of the judgment of the court of appeal.[2]
The issues presented for our determination are whether the accident caused the aggravation of plaintiff's pre-existing neurological condition beyond September 1, 1990 and, if so, whether plaintiff is entitled to supplemental earnings benefits.

Causation
An employee in a worker's compensation action has the burden of establishing a causal link between the accident and the subsequent disabling condition. Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320, 324 (La.1985). Where, as here, the employee suffered from a pre-existing medical condition, he may still prevail if he proves that the accident "aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed." Id. In Walton, this court recognized the existence of a presumption to aid plaintiffs in cases involving a pre-existing condition. We stated:
[W]hen an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability.
Id. at 324-25 (citing Hammond v. Fidelity & Casualty Co. of New York, 419 So.2d 829, 831-32 (La.1982); Haughton v. Fireman's Fund American Ins. Co., 355 So.2d 927, 929 (La.1978)). Once the employee has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the trier of fact that it is more probable than not that the work injury did not accelerate, aggravate or combine with the pre-existing disease or infirmity to produce his disability. Id. at 325. Furthermore, medical testimony, albeit significant, is not conclusive as to the issue of causation, which is generally the ultimate fact to be decided by the court after weighing all the evidence. Haughton, 355 So.2d at 928. Bearing in mind the tenet that the worker's compensation laws are to be liberally construed, we address the facts of the matter before us.
Dr. William A. Martin, a specialist in neurology, testified by deposition that he began treating Peveto in May 1986 for torticollis, which is an involuntary turning of the head toward the left and backward, and also for an abnormal turning of the right foot. The conditions appeared suddenly in 1985 and did not result from any trauma or medication. Dr. Martin learned that plaintiff had been delivered with forceps and had suffered an episode of glandular fever when he was three which lasted ten days. Shortly after the fever, plaintiff developed a speech impediment and gate ataxia which persisted through adulthood. In addition, he was a slow learner and eventually quit school in the tenth grade. Dr. Martin was unable to make a diagnosis at that time, but began treating the dystonic symptoms with medication. The drug therapy successfully stabilized plaintiff's condition. Between 1986 and 1990, plaintiff saw Dr. Martin approximately every six months, at which time his prescription would be refilled. Dr. Martin saw no progression in plaintiff's condition during this time. Peveto continued to work construction jobs without any work restrictions, played basketball and generally felt good.
After the accident in January of 1990, Dr. Martin diagnosed plaintiff with a post-traumatic concussion and posterior cervical pain *692 syndrome, which aggravated plaintiff's preexisting condition and produced a tremor which had not existed previously. Peveto was treated with medication and by September of 1990, he was no longer experiencing headaches. The dystonic symptoms had also stabilized, although they were more pronounced than they had been before the accident. Dr. Martin also determined that plaintiff was disabled and could not perform the construction work in which he had previously been employed. He has restricted plaintiff from working jobs where good dexterity, coordination, and motor control are required. Although he feels plaintiff has the strength to perform certain manual labor, his lack of motor control prohibits him from undertaking such employment. Further, Dr. Martin feels that if plaintiff were to attempt such employment, he would be at an increased risk of further injuring himself because of his coordination problems. Dr. Martin testified that plaintiff cannot perform work which demands fine visual inspection because of the turning of his head. In addition, plaintiff's speech impediment and lack of formal education also limit his employability.
Dr. Martin could not say if the accident caused the aggravation of the dystonic symptoms, or if plaintiff's present condition was the result of the natural progression of the disease. However, he did state that the patient's history indicated that the condition may have resulted from a high fever or a difficult birth, and that if either of these was the origin of the illness, it might not be progressive at all.[3]
Peveto testified that after he began taking medication in 1986, his condition stabilized and he was able to lead a normal life with no restrictions. He continued to work for various companies doing primarily blasting and painting work. He enjoyed hunting, fishing and playing basketball. Mrs. Peveto corroborated this testimony, saying that her husband did well with the medication and did not have any problems performing routine activities. After the accident, Peveto noticed an exacerbation of the dystonic symptoms and a tremor. His right foot tends to roll to the outside, which causes swelling and pain. He has problems turning his head and he finds that his body "shakes" when he tries to lay down. He is also experiencing pain in his neck. Both Peveto and his wife testified that he is no longer able to play basketball and that ordinary activities, such as mowing the lawn, take longer to complete.
Peveto has established that, prior to the accident, his condition had remained stable for approximately four years and he was able to work and enjoy a normal life. Immediately following the accident, the disabling symptoms manifested themselves and continue to prohibit him from working at his prior job and enjoying the activities he had performed previously. Although Dr. Martin could not determine whether the accident caused Peveto's present disability or whether his condition was the result of the natural progression of the illness, he did note that Peveto's episode of fever as a child was "more than likely" the etiology of the condition and thus it might not be progressive at all. Accordingly, we find that the above medical testimony and strong circumstantial evidence were sufficient to establish a "reasonable possibility" of a causal connection between the accident and the activation of plaintiff's disabling condition, thus creating a presumption of causation. Because the employer did not present any evidence to contradict or rebut the presumption, the hearing officer was clearly wrong in determining that the accident did not combine with the pre-existing condition and result in plaintiff's disability beyond September 1990.

Supplemental Earnings Benefits
In addition to compensation benefits for the disability itself, the Louisiana Worker's Compensation law also provides for the recovery of supplemental earnings benefits to compensate the employee for loss of earning capacity.[4] In order to recover, the employee *693 must first prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. La. R.S. 23:1221(3)(a); Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989). Once the employee has satisfied this burden, the employer must establish that the employee is earning less than he is "able to earn" by showing that the "employee is physically able to perform a certain [higher paying] job and that the job was offered to him or was available to him in a reasonable geographic location." Allen v. City of Shreveport, 618 So.2d 386, 389 (La.1993); La.R.S. 23:1221(3)(c)(i).
Having determined that there was a causal link between the work injury and plaintiff's continuing disability, we must next determine whether plaintiff is entitled to supplemental earnings benefits. The evidence is undisputed that Peveto is disabled and that he is presently not working. Dr. Martin did not discount the possibility of future employment in another field, and suggested that a vocational counselor and rehabilitation would be necessary in order to place plaintiff in other employment. However, plaintiff has not received rehabilitation and at this time his disability, speech impediment, and tenth grade education severely restrict his employability. Thus, Peveto has established by a preponderance of the evidence his inability to earn ninety percent of the wages he was earning at the time of the injury. The employer did not present any contradictory evidence, nor did it come forward with information about employment offered to the employee or available to the employee in a reasonable geographic region. Accordingly, Peveto is clearly entitled to supplemental earnings benefits.[5] In view of our finding that the accident caused the aggravation of his condition, Peveto may also be entitled to additional medical expenses. We will remand *694 the case to the hearing officer to make this determination.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed only insofar as it affirms the hearing officer's judgment dismissing plaintiff's claims for disability benefits beyond September 1, 1990 and medical expenses beyond May 1, 1991. The judgment is amended to award supplemental earnings benefits of $1029.13[6] per month beginning September 1, 1990, together with legal interest on each past due payment until paid. The case is remanded to the Office of Workers' Compensation Administration to determine the amount of additional medical expenses that may be due plaintiff and to render a proper judgment.[7] All costs of these proceedings are assessed against the defendants.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Ortique, J. was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] 618 So.2d 1197 (La.App. 5th Cir.1993).
[2] 623 So.2d 1316 (La.1993).
[3] Dr. John F. Schuhmacher, a neurological surgeon, testified by deposition that he examined Peveto on one occasion following the accident. He expressed no opinion as to whether the accident caused the aggravation of Peveto's illness and deferred to the findings of Dr. Martin in this regard.
[4] The supplemental earnings benefits provision, La.R.S. 23:1221(3), provides in pertinent part:

(a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or selfemployment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or the employer's community or reasonable geographic region.
[5] La.R.S. 23:1221(3)(a) specifies that supplemental earnings benefits are calculated as sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages the employee is earning or is able to earn after the accident. At oral argument, the parties agreed that the hearing officer had incorrectly determined plaintiff's average monthly wages prior to the accident. Pursuant to La.R.S. 23:1221(3)(a), average monthly wages are calculated as four and three-tenths times the average weekly wage as defined in La.R.S. 23:1021(10)(a). In the instant matter, plaintiff's average monthly wage should be:

 Average hours worked in 4 week
 period preceding the accident = 43.5 (173 total hours worked ÷ 4)
 Average weekly wage = $359 (40 hours × $8.00 standard rate) +
 (3.5 hours × $12.00 overtime rate)
 Average monthly wage pre-accident = $1543.70 ($359 × 4.3)
Next, we must determine the monthly supplemental earnings benefits due plaintiff:
 $1543.70 - $0 = $1543.70 × 2/3 = $1029.13 per month

[6] See footnote number 5 for calculation.
[7] Peveto neither briefed nor assigned as error a claim for penalties and attorney fees in this court. Nonetheless, we find that the award of penalties and attorney fees would not be appropriate. There was no medical evidence specifically linking the aggravation of plaintiff's condition beyond September 1, 1990 to the accident. No medical expert could determine whether the accident had caused the aggravation of his condition. Thus, although we find that plaintiff has satisfied his burden of proof under Walton, we do not believe that the employer acted arbitrarily and capriciously, or was unreasonable, in disputing the claim for benefits beyond September 1, 1990. La.R.S. 23:1201(E); 23:1201.2.