jJELVERTON, Judge.
This is an appeal by B & H Builders, Inc. and its workers’ compensation insurer, Employers Insurance of Wausau, from a judgment finding that Walter Jacobs suffered an accident while at work which resulted in his disabling skin condition.

FACTS

Jacobs worked for B & H since 1978 putting up rice dryers. The last day he worked for B & H was September 12,1990. On that day they were troubleshooting. He climbed up to the spreader on top of the rice bin, took I ¡¡his shirt off and began leveling it off. Grain started to fall all over him. They also sprayed a chemical called Ospho that day to remove rust from another rice bin.
Within the next two to three days he noticed crust coming off his hands. Later his skin started to blister. Jacobs was eventually diagnosed with a skin condition called photodermatitis.
After a hearing on April 1, 1993, the hearing officer found that Jacobs’ condition arose as a result of his job-related activities and exposure and awarded him benefits as well *545 as further medical treatment as needed for his skin condition.

STANDARD OF REVIEW

B & H and Employers contends that since the hearing officer’s decision was not based on his evaluation of the credibility of witnesses, but on medical evidence introduced through a deposition or medical report, the “manifest error” standard does not apply.
The “manifest error, clearly wrong” standard must be applied even where the evidence before the trier of fact consists solely of written reports, records and depositions. Alexander v. Pellerin Marble & Granite, 630 So.2d 706 (La.1994).

ACCIDENT

The main issues raised by B & H and Employers are whether Jacobs proved that he suffered an accident within the meaning of the Workers’ Compensation Act and whether his disability was the result of a work-related accident.
Despite the liberal construction of the statute afforded the worker in a compensation action, the worker’s burden of proof is not relaxed. Rather, as in other civil I ¡¡actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. A worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged accident. Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992).
The applicable statutory definition of “accident” is “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply gradual deterioration or progressive degeneration.” La.R.S. 23:1021(1), as amended in 1989 and effective January 1, 1990.
An employee in a worker’s compensation action has the burden of establishing a causal link between the accident and the subsequent disabling condition. Peveto v. WHC Contractors, 630 So.2d 689 (La.1994).
Jacobs testified that he started to break out the day after he worked with the grain in the rice bin and sprayed the chemical for rust. Also, within two to three days, the crust on his hands started peeling off.
By Jacobs’ own testimony, he proved that he suffered an accident. He was able to identify an actual, precipitous event of being exposed to grain and a chemical which removes rust. Jacobs started to experience symptoms the day following this exposure. No evidence discredited this testimony that there was an accident. Jacobs must then have proven that this accident (exposure) was the cause of his resulting skin condition.
I .Jacobs first saw Dr. Henry Dupre on October 1, 1990. He diagnosed Jacobs with contact dermatitis. Dr. Dupre referred him to Dr. Michael Doueet, a dermatologist.
Dr. Doueet saw Jacobs on October 10. At that time he had a rash on his arms and hands and had also developed a rash on his abdomen as well as his back. When he saw Jacobs on November 21, 1990, Dr. Doueet performed a biopsy from some of the papules on the hand. The biopsy showed changes which were consistent with contact dermatitis. Patch testing was performed on February 11 to February 15, 1991 in which he tested negative to all allergies. Dr. Doueet saw Jacobs again on April 3, 1991 and determined that he was probably suffering from a sun-related allergic contact dermatitis. On his next visit, Dr. Doueet referred Jacobs to Oschner Clinic to see Dr. Robert Rietschel, also a dermatologist.
Jacobs saw Dr. Rietschel on August 13, 1991. Dr. Rietschel was of the opinion that Jacobs suffered from photodermatitis. He stated that the cause for this particular disease was unknown and that the role of the initial contact dermatitis in setting off this particular problem is difficult to evaluate. In the absence of pre-existing skin disease it is conceivable that the initial event was misinterpreted as due to substances contacted on *546 the job. However, he also stated that it is also possible that the patient did contact something on the job to which he did react adversely. He further stated that it is clear from his current circumstances that exposure has nothing to do with his ongoing dermatological difficulties.
Dr. Doucet explained that for photoderma-titis to occur two things have to happen. First, a substance has to bind with the skin and cause a certain allergic ^reaction in the skin. Second, ultraviolet light has to hit the skin and alter the molecules to finish the reaction. This can also happen with the ingestion of a photoallergic causing substance, but the biopsy on Jacobs indicated that his skin condition was more the result of a contact reaction as opposed to an internal reaction.
Dr. Doucet also stated that if one is exposed to something and it is taken away, the effect can still persist for a long period of time. He also stated that dust from rice or wheat would not contain a photoactive substance, but that a person could develop a sensitivity to an allergin even though he had been previously exposed to it without incident. He likened this phenomenon to the case of a person exposed to poison ivy all his life without problems and who suddenly suffers a reaction.
Jacobs testified that although he had been exposed to this chemical which removes rust before, he had never sprayed it but had brushed it on. When using the sprayer, the chemical bounced back off the metal. It was also a hot day, so Jacobs would have been exposed to the sunlight which is one of the most common ultraviolet light sources.
Considering this evidence, we find that it was reasonable for the hearing officer to conclude that although it could not be directly related to exposure to the chemical at work without further testing, it was possible that this chemical caused Jacobs’ photoal-lergic reaction. This is especially true since there was absolutely no evidence of exposure to any other possible substance. For these reasons the hearing officer was not clearly wrong in his determination that Jacobs’ skin condition was the result of his exposure to the chemical at work.
Costs of this appeal are assessed to B & H Builders and Employers Insurance of Wau-sau.
AFFIRMED.