JiPLOTKIN, Judge.
Plaintiff Donnie Barnes appeals a judgment denying his claim for worker’s compensation benefits against defendant Tulane Medical Center. We affirm.

•Facts

Mr. Barnes was employed by Tulane Medical Center as a “mechanic,” doing painting and carpentry work, from 1980 until 1990. On January 21, 1982, Mr. Barnes fell off a ladder, injuring his knee. Dr. Michael Brunet of Tulane Medical Center treated Mr. Barnes for that injury; the treatment included a lateral meniscectomy and resulted in a 15 to 20 percent disability in Mr. Barnes’ left knee. After being off work for about 18 months because of the 1982 knee injury, Mr. Barnes returned to his former position at Tulane Medical Center. The only restriction Dr. Brunet placed on Mr. Barnes at that time was that he avoid excessive squatting. As a result of the 1982 injury, Mr. Barnes entered a settlement with Tulane Medical Center, surrendering his right to pursue further compensation beyond the settlement for all injuries suffered in the 1982 accident.
ROn November 1, 1990, Mr. Barnes claims that he suffered a second injury to his knee when he fell on a freshly-mopped floor while pushing a trash receptacle. The resulting injury to his knee, Mr. Barnes claims, rendered him totally and permanently disabled.
Immediately following the 1990 accident, Mr. Barnes again consulted Dr. Brunet, who testified by deposition that he was unable to determine from his one examination of Mr. Barnes that Mr. Barnes had suffered additional injury as a result of the 1990 accident. Dr. Brunet prescribed physical therapy for Mr. Barnes, and planned to reevaluate Mr. Barnes’ injuries after the physical therapy. However, Mr. Barnes never returned to Dr. Brunet.
Later, Mr. Barnes was sent by Tulane to Dr. James Williams, who treated Mr. Barnes for his various injuries allegedly arising from the 1990 fall for one and one-half to two years and became Mr. Barnes’ primary physician in fact. In his deposition, Dr. Williams opined that all of the problems with Mr. *1315 Barnes’ knees were caused by the 1982 accident and the surgery which was performed as a result of that accident. Dr. Williams stated that Mr. Barnes should avoid climbing, squatting, and kneeling, but stated unequivocally that those restrictions were related exclusively to the surgery Mr. Barnes received after the 1982 accident. Dr. Williams did not feel that Mr. Barnes had suffered any additional injury as a result of the 1990 accident; Dr. Williams also stated that Mr. Barnes is not totally and permanently disabled in his opinion.
Mr. Barnes received weekly worker’s compensation payments from Tulane of $262.13 from the time of the accident until April 13, 1992, at which time his compensation was reduced to supplemental earnings benefits (“SEB”) of $370.35 per month. Mr. Barnes filed a complaint alleging that his 1990 knee injury 1¡^rendered him permanently and totally disabled, or, alternatively, that his SEB should be increased to full benefits from the date of the reduction.
The worker’s compensation hearing officer denied Mr. Barnes’ claim for benefits, making the following finding of fact:
Any disability claimant suffers is a result of the January 21,1982 accident, for which there is a full and final settlement, not the November 1, 1990 accident which is the basis of the present claim.
Based on this finding, the hearing officer dismissed Mr. Barnes’ claim with prejudice.
Mr. Barnes appeals, claiming that the hearing officer misinterpreted the word “disability” as used in LSA-R.S. 23:1221, and that he was manifestly erroneous in holding that Mr. Barnes’ disability was caused by the 1982 accident. Mr. Barnes also argues concerning the correct rate of compensation and contests the trial judge’s statements indicating that Dr. Williams was his “treating physician.” [1]

Definition of “disability”

Mr. Barnes’ entire argument that the hearing officer improperly found that he suffered no disability from the 1990 fall is based on his position that the term “disability” for purposes of the worker’s compensation law has always been defined in terms of “inability to perform job functions and/or inability to earn Lineóme.” Using .this definition, Mr. Barnes claims that the hearing officer improperly found that his disability was not related to the 1990 accident, merely because the record establishes that he returned to his pre-1982 accident job and performed his job duties between 1983 and 1990, but never returned to the job following the 1990 accident. Mr. Barnes claims that the hearing officer’s conclusion that his disability is related to the 1982 accident is “bizarre” because of the following facts:
(1) Mr. Barnes worked full time as a “mechanic” from 1983 through 1990;
(2) Dr. Brunet examined Mr. Barnes on three occasions during this time period (1983, 1985, 1987) and on each occasion found him physically able to return to work as a “mechanic”;
(3) During the time period 1983-1990, no physician suggested that Mr. Barnes was unable to work as a “mechanic”;
(4) The only evidence that Mr. Barnes was disabled during the 1983-1990 time period is the opinion of the defense “IME”, who never saw Mr. Barnes during this time period.
In further support of this argument, Mr. Barnes cites extensively to Trimble v. HADCO Services, Inc., 93-1465 (La.App. 3d Cir. 6/1/96), 640 So.2d 645, in which the court reversed a judgment denying benefits under somewhat similar circumstances to this case. The Trimble court said that the hearing officer improperly failed to distinguish a pre *1316 existing injury from a disability which rendered the claimant unable to work, adding that the hearing officer ignored the “essential fact” that the claimant was able to work prior to the injury and was unable to work following the injury. See Trimble, 640 So.2d at 647.
Although Mr. Barnes correctly cites Trim-ble, we find Trimble inapplicable to the instant case because the record evidence is insufficient to prove the major premise of the decision in Trimble — that is, that Mr. Barnes was able to work prior to the 1990 accident, but unable to work afterward. Although the record is clear that Mr. Barnes did return to his job after the 1982 accident, and did not return |5to his job after the 1990 accident, that fact is not prima facie evidence that Mr. Barnes was unable to return to his job after the 1990 accident. Certainly, as discussed below, no record medical evidence establishes that fact. Thus, we find no merit in Mr. Barnes arguments on this issue.

Causation

Mr. Barnes also claims the decision that his disability is not related to the 1990 accident is incorrect because the hearing officer improperly failed to impose the correct burden of proof on the defendant employer. Tulane, on the other hand, claims that the only question on appeal is whether the hearing officer’s finding that Mr. Barnes’ disability is related only to the 1982 accident is manifestly erroneous.
In support of its position that the finding is not manifestly erroneous, Tulane points to medical evidence indicating that most of Mr. Barnes complaints’ are subjective and have not been verified by any objective symptoms reported by any of the medical professionals who have examined him. Tulane notes especially the fact that Mr. Barnes’ performance was inconsistent on a 1993 Occupational Therapy Work Capacity Assessment.
The “shifting” burdens of proof in a worker’s compensation case were explained by the Louisiana Supreme Court in Peveto v. WHC Contractors, 93-1402 (La. 1/14/94), 630 So.2d 689, 691. Under the standard established by Peveto, the claimant has the initial burden of proving the following:
that before the accident he had not manifested disabling symptoms, but that commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition....
1 &Id. (citation omitted). When the claimant has met this burden of proof, a presumption arises that the work-related injury “aggravated, accelerated or combined with his preexisting disease or infirmity to produce [the claimant’s] disability.” Id. Only after the claimant has evoked this presumption of causation does the burden shift to the defendant employer to produce evidence “persuading the trier of fact that it is more probable than not that the work injury did not accelerate, aggravate or combine with the pre-existing disability or infirmity to produce his disability.” Id.
We find that the record evidence is insufficient to meet Mr. Barnes’ initial burden of proof necessary to evoke the presumption of causation and shift the burden of proof to the defendant employer under Peveto. The only record evidence that the 1990 accident suffered by Mr. Barnes caused any additional disability is Mr. Barnes’ own subjective complaints, which are not verified by any record medical evidence. Further, the veracity of some of Mr. Barnes’ complaints is suspect, considering his inconsistent performance on the Occupational Therapy Work Capacity Assessment.
Mr. Barnes’ argument that his 1990 accident obviously caused his present disability is illogically premised on testimony that he had no problem working between 1983, when he returned to his job following the 1982 accident and the subsequent surgery, and November of 1990, when the second accident occurred. He combines this premise with the fact that Dr. Williams felt that he should not work at Tulane following the 1990 accident. From these two premises, Mr. Barnes deduces that he has met his burden of proof under Peveto. However, he ignores the fact that Dr. Williams stated that he should not have been working at Tulane between 1983 *1317 and 1990, as well as the fact that the 20 percent disability to his left lower extremity assigned by Dr. Williams after his 1990 accident was 17exactly the same as the 20 percent disability assigned by Dr. Brunet immediately after the surgery, prior to his return to work in 1983.
In short, the record evidence is insufficient to prove that Mr. Barnes was not physically disabled from performing his job duties prior to the 1990 accident, but was physically disabled from performing his job duties following the 1990 accident, despite Dr. Williams opinion that he should not perform those duties either before or after the 1990 accident. Mr. Barnes simply failed to carry his burden of proof on this issue; thus, we find no manifest error in the hearing officer’s decision dismissing his worker’s compensation claim.

Conclusion

Accordingly, the hearing officer’s decision dismissing Mr. Barnes’ worker’s compensation claim is affirmed.

AFFIRMED.

MURRAY, J., concurs in the result.

. Mr. Barnes claims that his true "treating physician" was Dr. Brunet, who he allegedly stopped seeing only because the defendant stopped paying compensation. He claims that Dr. Williams was an IME physician chosen by Tulane. However, during his testimony at the hearing, Mr. Barnes referred to Dr. Williams as though he were his physician of choice. Moreover, the record contains no indication that Mr. Barnes stopped seeing Dr. Brunet only because Tulane discontinued paying for his treatment. In fact, the record indicates otherwise, as Dr. Brunet’s name was not even listed on Mr. Barnes' claim form, which specifically asks the claimant to list all hospitals, climes, and doctors who provided medical attention following the alleged work-related accident. Thus, we find no merit in this argument.