771 So.2d 741 (2000)
Andre M. BEVERLY
v.
BOARDWALK CONSTRUCTION and Louisiana Workers' Compensation Corporation.
No. 00-00219.
Court of Appeal of Louisiana, Third Circuit.
October 11, 2000.
Writ Denied January 5, 2001.
*742 James E. Diaz, Jr., Gibson-Gruenert, L.L.P., Lafayette, Louisiana, Counsel for Plaintiff-Appellant.
Travis R. LeBleu, Egan, Johnson & Stiltner, Baton Rouge, Louisiana, Attorney for Defendant-Appellee.
Court composed of ULYSSES GENE THIBODEAUX, JOHN D. SAUNDERS, and MARC T. AMY, Judges.
SAUNDERS, Judge.
This suit arose from injuries sustained by Andre Beverly in a work accident that occurred on January 13, 1998. Mr. Beverly brought suit when his employer's workers' compensation carrier, Louisiana Workers' Compensation Corporation (LWCC) refused to pay for medical treatment for headaches that Mr. Beverly alleged were caused by his accident. At trial, the administrative law judge held in favor of the Defendants. We affirm.

*743 FACTS

Andre Beverly was employed by Boardwalk Construction Company (Boardwalk) in January 1998. On January 13, 1998, an accident occurred while Mr. Beverly was jacking up a house in preparation for remodeling to be done by Boardwalk. Mr. Beverly sneezed, felt immediate back pain, and dropped to his knees. At the time of the accident, LWCC was providing workers' compensation coverage for Boardwalk's employees. After the accident, Mr. Beverly complained that he felt a sharp pain in his back that radiated down to his knees. Mr. Beverly was unable to complete the workday because of the pain. The next day he went to the emergency room at Our Lady of Lourdes. Mr. Beverly remained at the hospital as an inpatient for three days. Because of the accident, Mr. Beverly alleges that he has suffered from headaches, neck pain, and low back pain. Mr. Beverly further alleges that he has had difficulty controlling his bladder and his bowel habits since his lower back injury.
Mr. Beverly returned to the hospital as an inpatient in February. On February 9, 1998, Dr. Mark Stephan, a radiologist, performed a myleogram on Mr. Beverly. While Dr. Stephan conducted the myelogram, Mr. Beverly alleged that he began experiencing severe headaches. Later, during the same hospital stay, on February 12, 1998, Mr. Beverly underwent a microdiskectomy for a herniation of his disk at L5-S1. After his discharge from the hospital on February 14, 1998, Mr. Beverly alleged that his headaches became increasingly severe. Before that time, Mr. Beverly testified he had never experienced chronic headaches.
After his injury, LWCC paid medical benefits and weekly indemnity benefits to Mr. Beverly. LWCC refused to pay medical benefits with respect to Mr. Beverly's chronic headaches asserting that his chronic head pain was not related to the back injury of January 13, 1998.
On February 10, 1999, almost a year after Mr. Beverly's first back surgery, Dr. Cobb, Mr. Beverly's treating physician, recommended a second back surgery at L5-S1. Mr. Beverly furnished Dr. Cobb's recommendation to the defendants on the same day by fax to Leslie Koch, counsel for LWCC. Then on March 4, 1999, Mr. Beverly's counsel faxed a request to Ms. Koch regarding the status of the surgical authorization. Ms. Koch responded on March 5, 1999, that LWCC would deny authorization of the second surgery pending the schedule of a defense evaluation.
Dr. Cobb's office sent Andrew Davis, the LWCC claims representative handling appellant's claim, a letter dated February 13, 1999, regarding the recommended surgery. Upon receipt of the letter, Mr. Davis called the precertification company and asked it to review the request. Mr. Davis testified that the precertification company recommended scheduling a defense evaluation on February 26, 1999. Mr. Davis also testified that he scheduled the defense evaluation on March 5, 1999, although the appointment could not be set until May. On April 30, 1999, Mr. Davis advised appellant's counsel that he had scheduled a defense evaluation with a doctor for May 14, 1999.

LAW AND ANALYSIS

STANDARD OF REVIEW
An appellate court may not set aside the factual findings of a trial judge in the absence of manifest error or unless they are clearly wrong. Stobart v. State, through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993). The reviewing court must do more than simply review the record for some evidence which supports or controverts the trial judge's findings; the appellate court must "review the record in its entirety to determine whether the administrative law judge's finding was clearly wrong or manifestly erroneous." Id. at 882.

*744 ASSIGNMENTS OF ERROR
On appeal, Appellant seeks reversal of the administrative law judge's decision based on the following five assignments of error:
1. The administrative law judge erred in failing to find that Mr. Beverly's headaches were related to the work accident of January 13, 1998;
2. The administrative law judge erred in failing to find that the myelogram of February 9, 1998 aggravated Mr. Beverly's headaches, and in failing to find a causal relationship between the aggravation of Mr. Beverly's headaches and the work accident;
3. The administrative law judge erred in failing to apply a presumption of causation in Mr. Beverly's favor;
4. The administrative law judge erred in failing to find that LWCC unduly delayed in the investigation of the employee's medical condition, where a second back surgery was recommended as of February 10, 1999, but the defense evaluation appointment was not scheduled until May 14, 1999;
5. The administrative law judge erred in failing to award Mr. Beverly penalties and attorneys fees.
The court will address each of these assignments of error in turn.

SOURCE OF HEADACHES
The administrative law judge found that Mr. Beverly (Appellant) did not prove his headaches were caused by his work accident on January 13, 1998. At trial, Appellant produced some evidence that his headaches were work-related. Appellant produced records from his hospital stay on January 14-17, 1998. In these records, a progress note written by Dr. Maddux, a doctor at Our Lady of Lourdes, stated that Mr. Beverly had "headache, neck pain, and low back pain radiating to both legs." Dr. Gerald Nickerson's patient notes also reflect Appellant's headache complaints. Dr. Nickerson's notes stated, "He also complains of headaches, described as pressurelike in character, which occur daily intermittently." Finally, Appellant testified at trial that he had experienced headaches when he returned home after his microdiskectomy on February 14, 1998. Evidence that Appellant complained of headaches after the accident without more, however, is not enough to establish the causal link between his work accident and headaches.
At trial the depositions of several doctors were accepted as part of the record. The depositions admitted were those of Dr. Dhanpat Mohnet, Dr. Charles Kaufman, Dr. Gerald Nickerson, and Dr. Debra Elliot. Of the experts deposed only one, Dr. Mohnet, stated that in his opinion it was more probable than not that Appellant's headaches were caused by his work-related accident. Dr. Charles Kaufman in his deposition, in contrast, stated that he did not think Appellant's headaches were related to Appellant's accident history. In addition, Dr. Nickerson stated that it was more probable that the headaches were not directly related to the traumatic incident. Finally, Dr. Elliot, the court appointed independent medical examiner, in her deposition stated that Appellant's headaches were "only perhaps indirectly" related to the accident.
A hearing officer is afforded much discretion in evaluating expert testimony, and where the expert testimony differs, it is his or her responsibility to determine which evidence is more credible. Smith v. Martin Mills, Inc., 97-11 (La. App. 3 Cir. 5/21/97); 701 So.2d 680, writ denied, 97-1628 (La.10/3/97), 701 So.2d 207 Here, where sufficient evidence supports the conclusion that the administrative law judge's ruling was a reasonable one, we will not disturb that determination. Where the trial judge's findings are reasonable in light of the record, reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart, 617 So.2d 880.

*745 AGGRAVATION OF HEADACHES BY MYELOGRAM
The administrative law judge ruled that Appellant's headaches were not aggravated by the myelogram performed after the work-related accident. At trial, Appellant testified that his headaches became much worse after the myelogram. Appellant testified that his head began hurting him during the procedure, causing his head to feel like it was about to explode. Appellant testified that on a scale of zero to nine the pain from his headaches had been at four-and-a-half every day since he had the myelogram.
After the myelogram, Appellant remained in the hospital for several days. The nurse's notes on February 10 and 11, 1998, the two days following the myelogram, do not indicate that appellant complained of headaches. In addition, the hospital discharge form of February 14, 1998 does not show that appellant suffered from any headaches. Further, Dr. Mark Stephan, the radiologist that performed the myelogram, testified that Appellant did not complain of head pain during the procedure.
During the doctors' depositions, counsel for both sides also explored the possibility that Appellant's headaches had been caused or aggravated by the myelogram. Dr. Mohnot opined that the headaches were related to the fall and were aggravated by the myelogram. However, Dr. Kaufman testified that what appellant described to him was not typical of a postlumbar puncture or post-myelogram headache. In addition, Dr. Elliott, the court's independent medical examiner, testified that she could not say for certain that the myelogram caused or aggravated the headaches.
Deference is due to the factfinder's determinations regarding the credibility of witnesses "for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Wackenhut Corrections Corporation v. Bradley, 96-796, p. 4 (La. App. 3 Cir.1996), 685 So.2d 661, 663, quoting Rosell v. ESCO, 549 So.2d 840 (La. 1989). Here, since the administrative law judge's determination of fact appears reasonable, we will defer to his determination regarding the credibility of the witnesses. Therefore, we find that the administrative law judge did not commit a manifest error in ruling that the headaches were not caused or intensified by the myelogram.

PRESUMPTION OF CAUSATION
Appellant asserts that the administrative law judge erred in failing to apply a presumption of causation in his favor. At trial, Appellant put the court on notice of the presumption by including it in his pretrial memorandum. The presumption discussed in Peveto v. WHC Contractors, 93-1402, p. 2 (La.1/14/94), 630 So.2d 689, 691 and states:
In Walton[ v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320 (La.1985)], this court recognized the existence of a presumption to aid plaintiffs in cases involving a pre-existing condition. We stated: [W]hen an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability. Id. at 324-25 (citing Hammond v. Fidelity & Casualty Co. of New York, 419 So.2d 829, 831-32 (La.1982); Haughton v. Fireman's Fund American Ins. Co., 355 So.2d 927, 929 (La.1978)). Once the employee has established the presumption of causation, the opposing party bears the burden of producing *746 evidence and persuading the trier of fact that it is more probable than not that the work [93-1402 La. 3] injury did not accelerate, aggravate or combine with the pre-existing disease or infirmity to produce his disability. Id. at 325.
This presumption exists to aid a workers' compensation claimant in carrying his burden of proof. It is incumbent on the administrative law judge to consider the Peveto presumption when weighing the evidence produced at trial. The Peveto presumption, however, is a rebuttable one. Here, it is clear from the record, that the defendants produced ample evidence to rebut the Peveto presumption. The fact that the administrative law judge did not find in Appellant's favor, standing alone, does not suggest that he did not apply the presumption. The record adequately supports the administrative law judge's finding of fact. Moreover, we find nothing in this record to show that the administrative law judge's finding of fact was not proper; nor do the appellant's make any showing that the administrative law judge failed to apply the proper presumption. Therefore, the administrative law judge was not manifestly erroneous in concluding that Appellant had not met his burden of proof with respect to the work-relatedness of his headaches.

DELAY OF INVESTIGATION
Appellant asserts that LWCC should be liable for its delay in setting up a defense evaluation after Dr. Cobb recommended a second back surgery. Appellant argues that LWCC was under an obligation to investigate timely Dr. Cobb's recommendation and to make a decision.
Appellant contends that La.R.S. 23:1201(E) provides that LWCC had sixty days to decide whether to approve medical benefits. Appellant's interpretation of the statute is incorrect. La.R.S. 23:1201 deals with the payment of uncontroverted medical bills. Under that provision, medical benefits payable under workers' compensation must be paid within sixty days after the employer or insurer receives notice. This section is silent regarding the time frame in which a defense evaluation must take place.
In addition to his reliance on La.R.S. 23:1201(E), Appellant relies on Foster v. Liberty Rice Mill, 96-438 (La.App. 3 Cir. 12/11/96), 690 So.2d 792. In Foster, this court held that a four month delay between the doctor's recommendation that a claimant undergo surgery and the evaluation of claimant by employer's doctor was unreasonable. The court's decision turned on the fact that the long delay prejudiced the plaintiff's chance of full recovery.
Unlike Foster, the facts of this case do not support a finding of unreasonable delay on the part of the insurer or employer. In Foster, the court was dealing with a four month delay. In the instant case, the delay in question is a three month delay. In addition, unlike the unexplained delay in Foster, the delay in the instant case has a reasonable explanation. The Defendants were first apprized of Dr. Cobb's recommendation of a second surgery on February 10, 1999. On February 26, 1999, the Defendant's precertification company recommended that Mr. Davis schedule a defense evaluation. Mr. Davis scheduled the defense evaluation on March 5, 1999. The lapse between the Defendants' receipt of the request to the time Defendants scheduled the defense evaluation was less than one month. The remainder of the delay was attributable to the doctor's inability to schedule an appointment for Mr. Beverly before May 14, 1999.
Based on the aforementioned discussion, we hold that the administrative law judge did not err in ruling that the insurer did not wait too long to request a second medical opinion.

PENALTIES AND ATTORNEYS FEES
At trial, claimant's request for penalties and attorneys fees was denied. Appellant's claim is based on LWCC's delay in setting up the defense evaluation regarding the recommendation for appellant's *747 second back surgery. La.R.S. 23:1201 is a penal statute and thus must be strictly construed. Lutz v. Jefferson Parish Sch. Bd., 503 So.2d 106 (La.App. 5 Cir.1987). See Ball v. Dawsey Corp., 95-669 (La.App. 5th Cir.11/28/95); 665 So.2d 566. As discussed earlier in this opinion, the statute deals only with uncontroverted medical claims. The determination of whether an employer should be cast with penalties and attorneys fees is essentially a question of fact and the trial court's finding shall not be disturbed on appeal absent manifest error. Oliveaux v. Riverside Nursing Home, 29-419 (La.App. 2 Cir. 4/2/97), 691 So.2d 340, Foster, 690 So.2d 792. After reviewing the record, this court finds that the administrative law judge did not err in ruling that penalties and attorneys fees were not warranted.

DECREE
Considering the foregoing discussion, we find that the administrative law judge did not err in finding judgment in favor of the Defendants, Boardwalk Construction and Louisiana Workers' Compensation Corporation. All costs of this proceeding are assigned to the Defendants.
AFFIRMED.