977 So.2d 56 (2007)
Roger W. WALKER
v.
ENVIRONMENTAL ABATEMENT SERVICES and LWCC.
No. 2007 CA 0095.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
Robert L. Campbell, Baton Rouge, LA, for Plaintiff/Appellant, Roger W. Walker.
Gregory E. Bodin, Phillip E. Foco, Edward D. Hughes, Baton Rouge, LA, for Defendants/Appellees, Environmental Abatement Services and LWCC.
Before PARRO, KUHN, and DOWNING, JJ.
DOWNING, J.
Roger Walker appeals a judgment rendered by the Office of Workers' Compensation Judge (WCJ) dismissing his claim for benefits. For the following reasons we affirm the WCJ judgment.
The WCJ written reasons state that she dismissed the claim because Walker failed to prove an aggravation of a pre-existing condition. She specifically found that Mr. Walker's spinal problems were not related to his employment accident. The written reasons, as summarized below, adequately explain the WCJ determination:
Walker was employed by Environmental Abatement Services, Inc., (EASI), from March 29, 2005 until he was fired on May 19, 2005. Walker filed a disputed claim for compensation on June 6, 2005, alleging injuries to his left arm, shoulder, neck and back from an alleged accident on May 2, 2005 while working for EASI. EASI denied that the back and neck problem were related to the alleged accident, but admitted that the left arm and shoulder problem were related. Pay records established that Walker did not work on May 2, 2005, the date of his alleged accident. However, Kenny Head, a co-worker, however, testified that one day Walker had reported to him that he had fallen off a tractor[1] and hurt his wrist. Mr. Head testified that he asked Walker if he wanted to fill out an incident report, but Walker told him that he was fine. Ron Chandler, the supervisor, testified that he was unaware of Walker's accident. Walker continued to work without complaint until he was terminated.
*58 The written reasons further indicate that voluminous medical records were admitted in globo documenting a twenty-one year history of back and neck complaints. These records indicate that Walker was receiving pain medications from more than one doctor at the same time. Several years earlier, two doctors had discharged him from care because of this behavior.
The record indicates that Walker presented himself to Dr. Jed Morris roughly seven months prior to beginning work at EASI, complaining of neck and back pain. Dr. Morris prescribed a pain medication, Percoset, but he later discovered that Dr. Richard Rathbone was also treating him with another pain medication, Oxycontin.
On April 4, 2005, shortly after beginning his job with EASI, Walker went to Dr. Rathbone complaining of arm, shoulder, and neck pain. He told the doctor that he hit a stump while on a dozer, but he did not mention a fall. One week later, on April 11, 2005, he went to Dr. Morris complaining of aching joints. On May 9, 2005, one week after the alleged accident at work, Walker went back to Dr. Rathbone complaining about neck and back pain. Dr. Rathbone testified that Walker did not report any new accidents or injuries. Three days later, Walker went back to Dr. Morris complaining that he was sore all over, but did not mention that he fell from a dozer.
Not until June 14, 2005, almost a month after being fired from EASI, did Walker mention a fall off a dozer to Dr. Morris. At that time he reported pain in his left hand and a neck spasm, but made no mention of lower back pain. Dr. Morris ordered a cervical MRI.
On June 23, 2005, Walker went to the Our Lady of the Lake Hospital emergency room complaining that he was standing on a riding lawnmower, turned and felt a "pop" in his back. He stated that he passed out due to the pain and fell to the ground. He stated that the accident occurred at home thirty minutes prior to arrival at the hospital. Dr. Glenn Anderson reported that Walker has had a chronic history of back problems. He further noted that most recently he fell off his bulldozer at work, which was about two months ago, but the pain resolved after about three to four days. He said he was out in the yard and twisted his back and had a sudden onset of back pain with intermittent numbness of the left leg. He was diagnosed with a compression fracture at L5.
Dr. Fraser Landreneau testified by deposition that he ultimately performed surgery for the L5 fracture. He said that although Walker could have fractured his back when he twisted his back in the yard, typically this fracture is caused when someone falls. Dr. Landreneau concluded that in his opinion the neck and L5 problems were more likely to be related to the fall from a bulldozer.
Looking at the evidence as a whole, the WCJ concluded that Walker failed to prove that he injured or aggravated his pre-existing back and neck condition while working for EASI. When an employee suffers from a preexisting medical condition, he may still prevail if he proves that the accident aggravated, accelerated or combined with the disease or infirmity to produce the disability for which compensation is claimed. Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689, 691, citing Walton v. Normandy Village Homes Ass'n., Inc., 475 So.2d 320, 324. In Walton the Louisiana Supreme Court recognized the existence of a presumption to aid plaintiffs in cases involving a pre-existing condition, wherein it stated:
[W]hen an employee proves that before the accident he had not manifested disabling *59 symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability. Walton, 475 So.2d at 324-325.
Here, Walker's medical records clearly establish that he did manifest back pain symptoms during the period immediately before he began working at EASI. Furthermore, he had two serious falls shortly before he started that job. The record establishes that he was actively seeking pain medication from both Dr. Morris and Dr. Rathbone, apparently without informing either one he was obtaining medication from the other. It is well documented that he had done the same with Dr. Batholomew and Dr. Anderson in the past.
The WCJ said that Walker's lack of veracity and inconsistencies in the histories given to his doctors cast serious suspicion on his account of the accident. Moreover, the WCJ found it suspicious that Walker waited until a month after he was fired to tell any physician about an allegedly severe fall from a bulldozer. When he mentioned the fall to Dr. Morris, he specifically complained of falling on his left hand and not on his backside as he testified in deposition. Dr. Morris' records seems more consistent with the testimony of Mr. Walker's co-workers, who confirmed that he only complained of hurting his wrist. Only after Mr. Walker sustained a severe subsequent injury to his back at home, when he fell off his lawnmower on June 23, 2005, which caused him to be hospitalized, did he relate his back pain to his fall at work two months earlier. For these reasons, the WCJ conclude that Mr. Walker's neck and back problems, and the subsequent back and neck surgeries performed by Dr. Landreneau, are not related to his employment with EASI.
After a thorough review of the record, we conclude that the record supports the WCJ decision. Accordingly, we find no manifest error. The judgment of the WCJ is affirmed.
We render this memorandum opinion in accordance with Uniform Rules  Courts of Appeal, Rule 2-16.1 B. All costs of this appeal are assessed against Roger Walker.
AFFIRMED.
NOTES
[1] Walker later claims to have fallen off of a dozer.