# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-761

LEROY JOHNSON

VERSUS

LOFTON STAFFING SERVICES, INC.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - District 04
PARISH OF LAFAYETTE, NO. 19-07952 C/W 19-08474
ANTHONY PAUL PALERMO, WORKERS COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## GARY J. ORTEGO
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Charles G. Fitzgerald, and Gary J. Ortego, Judges.

**AFFIRMED AND RENDERED.**

**Eric J. Waltner**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1400**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Lofton Staffing Services, Inc.**

**Timothy E. Benedetto**
**Attorney at Law**
**3045 Ridgelake Dr #203**
**Metairie, LA 70002**
**(504) 838-8883**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Leroy Johnson**

**ORTEGO, Judge.**

In this workers' compensation case, an employee, working through a staffing service, alleged a work injury while performing his work duties at a jewelry manufacturer on November 7, 2019. The staffing service ceased paying benefits after discovering that the employee had visited an emergency room on November 3, 2019, just four days before the alleged work injury.

The staffing service filed a 1008 Disputed Claim for Compensation on December 3, 2019. Employee filed a 1008 Disputed Claim for Compensation on December 18, 2019. The matters were consolidated on January 21, 2020. A trial was held before a workers' compensation judge (WCJ) on July 15, 2021. After completion of the trial, the WCJ found that the employee was entitled to indemnity benefits, along with penalties and attorney fees under La.R.S. 23:1201(F), but not La.R.S. 23:1201(I). Both the staffing service and employee appeal.

## FACTS AND PROCEDURAL HISTORY

Employee, Leroy Johnson (Johnson), was employed by Lofton Staffing Services, Inc. (Lofton Staffing). Johnson, while assigned by Lofton Staffing to work at Stuller, Inc. as a forklift operator, alleges a work-related injury occurred on November 7, 2019. According to Johnson, when he was moving a pallet of copy paper, he reached a corner and began turning the pallet jack when the wheels on the jack became stuck. Johnson testified that he then jerked the handle to loosen the wheels. When he did this, Johnson testified that he immediately felt a burning sensation across his middle back and across his shoulders. Johnson also claimed that the sudden pain caused him to collapse to the ground, landing on his side.

Thereafter, Johnson spoke to his on-site supervisor and was instructed to report to Acadian Health Services, Inc. (AHS) walk-in clinic, where he was

1

diagnosed with a muscle strain and was released to full-duty work. According to Johnson, he continued to have severe pain, requiring someone to provide him a ride to go home that day. Early the next morning, Johnson went to the Emergency Room (ER) at Opelousas General Hospital, where x-rays revealed a rib fracture. Johnson was sent home and told to follow-up with his primary care medical provider.

As suggested, Johnson followed-up with his primary care medical provider on November 14, 2019. The medical provider placed him on modified-work duty. These restrictions were sent to Lofton Staffing, and indemnity benefits were requested. These benefits were denied based on the findings reached at the AHS walk-in clinic that Johnson was released to full duty. Johnson received further treatment at Recovery ChiroMed. Johnson next was seen on December 5, 2019, at the same ER with continued complaints of pain.

Due to conflicting medical evidence as to Johnson's work status, on December 3, 2019, Lofton Staffing filed a 1008 Disputed Claim for Compensation requesting an Independent Medical Examination. Johnson filed a 1008 Disputed Claim for Compensation of his own on December 18, 2019. These matters were eventually consolidated.

Johnson selected Dr. John Sledge as his orthopedic surgeon of choice. On January 8, 2020, Dr. Sledge opined that Johnson was totally disabled from work and recommended a thoracic MRI. As a result, Lofton Staffing initiated indemnity benefits on January 21, 2020, effective January 8, 2020. On February 14, 2020, Johnson's deposition was taken wherein he denied ever injuring or receiving treatment to his back before November 7, 2019. However, Lofton Staffing learned that Johnson was seen at Opelousas General Hospital four days prior to the alleged

2

work-related accident for what he characterized as minor back pain from lifting his child and twisting.

On March 16, 2020, Johnson was seen by Lofton Staffing's choice of orthopedic surgeon, Dr. Alexander Michael. Dr. Michael agreed that the thoracic MRI was medically necessary, and that Johnson's injuries were work related. Dr. Michael also placed work restrictions on Johnson. Nonetheless, based on Johnson's failure to reveal his November 3, 2019 ER visit at his deposition taken on February 14, 2020, and to various medical providers, Lofton Staffing terminated Johnson's workers compensation benefits effective March 16, 2020.

Trial was held on July 15, 2021. The WCJ found that Johnson carried his burden of proving entitlement to workers' compensation benefits and that Lofton Staffing failed to carry its burden to prove fraud committed by Johnson. As such, the WCJ reached a judgment awarding Johnson past benefits and assessed penalties against Lofton Staffing for failure to adhere to its obligations under La.R.S. 23:1201(F). Further, the WCJ denied penalties and attorney's fees requested by Johnson under La.R.S. 23:1201(I) based on its finding that Lofton Staffing could reasonably allege fraud by Johnson.

Lofton Staffing appeals, assigning nine errors. Johnson answers the appeal, alleging one assignment of error, and requests additional attorney fees for work done on appeal.

**ASSIGNMENTS OF ERROR**

*Lofton Staffing Services, Inc.*

1.  It was manifest and/or legal error for the [WCJ] to conclude that Appellee's false statements were inadvertent, inconsequential or not willful.

2.     It was manifest and/or legal error for the [WCJ] to conclude that Appellee did not violate La.R.S. 23:1208.

3.     It was manifest and/or legal error for the [WCJ] to rely on the records of the chiropractor and Dr. Sledge to establish causation.

4.     It was manifest and/or legal error for the [WCJ] to conclude that Appellee established causation.

5.     It was manifest and/or legal error to find that indemnity benefits were owed from November 14, 2019, to January 7, 2020.

6.     It was manifest and/or legal error to award penalties (penalty for failure to institute benefits and penalty for failure to pay indemnity benefits from November 14, 2019, to January 7, 2020) and attorney fees.

7.     It was manifest and/or legal error to award a penalty and attorney fees for failure to pay indemnity benefits from March 10-16, 2020.

8.     It was manifest and/or legal error to award a penalty and attorney fees for failure to approve a thoracic MRI.

9.     It was manifest and/or legal error to award a penalty and attorney fees for failure to pay a chiropractor's bill.

*Leroy Johnson*

1.     The [WCJ] was clearly wrong/manifestly erroneous in failing to award an additional penalty and additional attorney's fees pursuant to La.R.S. 23:1201(I).

## LAW AND DISCUSSION

*I.     Standard of Review*

The manifest error standard of review is the correct standard to be applied by the appellate court in workers' compensation cases. *Dean v. Southmark Construction*, 03-1051 (La 7/6/04), 879 So.2d 112. Thus, the WCJ's findings will not be set aside absent a showing that they are clearly wrong. *Alexander v. Pellerin Marble & Granite*, 93-1698 (La 1/14/94), 630 So.2d 706. "The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Blake v. Turner Industries Group, LLC*, 12-140, p. 6 (La.App. 1 Cir. 9/21/12), 111 So.3d 21, 25.

*Young v. CB&L, LLC*, 20-619, p. 4 (La.App. 3 Cir. 10/27/21), 329 So.3d 905, 909.

4

"Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (*citing Arceneaux v. Domingue*, 365 So.2d 1330, 1333 (La.1978)),

> When findings are based on determinations regarding the credibility of witnesses, the manifest error – clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.

*Id.*

## II. *Violation of La.R.S. 23:1208*

In its first two assigned errors, Lofton asserts that the trial court erred by concluding that Johnson's false statements were inadvertent, inconsequential, or not willful and that the trial court erred by concluding that Johnson did not violate La.R.S. 23:1208. We find no merit to either assigned errors.

Louisiana Revised Statutes 23:1208(A) states, "It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." Further, in addition to being subject to potential criminal penalties, La.R.S. 23:1208(E) states, "Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter." In *KLLM, Inc. v. Reed*, 00-295, p. 6 (La.App. 3 Cir. 10/11/00), 771 So.2d 728, 731, (citing *Resweber v. Haroil Constr. Co.*, 94-2708 (La.9/5/95), 660 So.2d 7), this court stated, "The only requirements for forfeiture of benefits under Section 1208 are (1) a false statement or representation (2) that is willfully made (3) for the purpose of obtaining or

5

defeating any benefit or payment under the workers' compensation law. This court went on to state:

> [S]tatutory forfeiture is a harsh remedy and, therefore, must be strictly construed. *Benoit v. Frank's Casing Crew*, 97-1522 (La.App. 3 Cir. 5/20/98), 713 So.2d 762, *writ denied*, 98-1697 (La.10/9/98), 726 So.2d 31. False statements that are inadvertent or inconsequential will not result in forfeiture. *Menard v. Mama's Fried Chicken*, 97-488 (La.App. 3 Cir. 3/6/98); 709 So.2d 303, *writ denied*, 98-956 (La.6/5/98), 720 So.2d 681.

*Id.*

In the case before us, the WCJ's judgment stated that Lofton Staffing failed to carry its burden to prove that Johnson willfully made a false statement for the purposes of obtaining benefits. The WCJ found that Johnson was "fairly credible with regards to his testimony" and that Johnson's failure to disclose the minimal prior medical treatment to his back did not rise to the level of willful, fraudulent statements made for the purpose of obtaining workers' compensation benefits.

Lofton Staffing argues that a reasonable fact finder would not credit Johnson's explanations as to why he failed to disclose the incident from four days prior to his work injury. We disagree.

Evidence in the record supports the WCJ finding that Johnson did not think the incident resulting in his receipt of prescription medication to alleviate pain in a similar area from an emergency room visit was significant enough to disclose, that Johnson did not feel that the resulting pain from the previous incident was truly an injury, that Johnson's symptoms from the incident and the work injury were different, that Johnson felt rushed to finish filling out fifteen pages of his employer's incident paperwork, and did not realize the incident four days prior qualified as what the questions were asking him to reveal, and that Johnson understood questions

6

asking about any injury did not mean any pain, rather than pain from a serious injury requiring medical treatment.

Accordingly, the WCJ, in a superior position to this court to determine Johnson's credibility, chose to give credence to that permissible view of the evidence. Given our appellate function, the status of the record, and the applicable standard of review, we find no error by the WCJ on the issue of whether Johnson violated La.R.S. 23:1208.

### III. Causation and Connexity

Lofton Staffing alleges in its third assigned error that the WCJ erred in finding that Johnson established causation by relying on the records of the chiropractor, Jason Neatherlin, D.C., and Dr. John Sledge, orthopaedic surgeon. Thereafter, Lofton Staffin alleges in its fourth assigned error that the WCJ erred in finding that Johnson carried his burden to prove causation.

This court, in *Lenox v. Central Louisiana Spokes, LLC,* 18-556, pp. 4-5 (La.App. 3 Cir. 2/13/19), 265 So.3d 834, quoted *Welborn v. Thompson Const.*, 15-1217, pp. 4-5 (La.App. 1 Cir. 2/26/16), 191 So.3d 1086, 1088-89 (emphasis ours), wherein our sister court stated the following:

> The workers' compensation laws provide coverage to an employee for personal injury received by accident arising out of and in the course of employment. LSA-R.S. 23:1031(A). An employee must prove the chain of causation required by the workers' compensation statutory scheme. He must establish that the accident was work-related, that the accident caused the injury, and that the injury caused the disability. *See DeGruy v. Pala, Inc.*, 525 So.2d 1124, 1130 (La.App. 1st Cir.), *writ denied*, 530 So.2d 568 (La.1988). Initially, a workers' compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. *Holiday v. Borden Chem.*, 508 So.2d 1381, 1383 (La.1987). Next, he must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146, 1147 (La.1979). **Causation is not necessarily and exclusively a medical**

7

*conclusion. It is usually the ultimate fact to be found by the fact finder based on all credible evidence*. *DeGruy*, 525 So.2d at 1132.

Even if the employee suffered from a pre-existing medical condition, he may still meet his burden of proof of causation if he proves that the reported accident aggravated, accelerated, or combined with the pre-existing condition to produce a compensable disability. *Peveto v. WHC Contractors*, 93-1402 (La. 1/14/94), 630 So.2d 689, 691. He may be aided in meeting the foregoing burden by a presumption of causation, if he can prove that before the accident he had not manifested disabling symptoms, that such symptoms commenced with the accident and manifested themselves thereafter, and that either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and onset of the disabling symptoms. *Walton v. Normandy Village Homes Ass'n, Inc.*, 475 So.2d 320, 324-25 (La.1985).

Although procedural rules are construed liberally in favor of workers' compensation claimants, the burden of proof, by a preponderance of the evidence, is not relaxed. Thus, the testimony as a whole must show that more probably than not an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, the plaintiff's case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. *Buxton v. Iowa Police Department*, 2009-0520 (La. 10/20/09), 23 So.3d 275, 283.

"[I]t is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover." *Hammond v. Fidelity & Cas. Co. of New York,* 419 So.2d 829, 831 (La.1982). "Furthermore, medical testimony 'must be weighed in the light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events in order to judicially determine probability' ..." *Schouest v. J. Ray McDermott & Co.*, 411 So.2d 1042, 1044-45 (La.1982)." *Id.*

In the case before us, the WCJ found that Johnson carried his burden to prove causation and connexity of the work accident and his resulting disability. Therefore, we must determine whether a reasonable basis exists for the WCJ to find: (1) that Johnson did not have disabling symptoms before the accident; (2) that Johnson's disabling symptoms commenced with the accident or thereafter; and, (3) that other

8

evidence points to a connection between the accident and the beginning of those disabling symptoms.

Johnson and his wife both testified that his complaints of mid-back pain and chest pain were not present prior to the November 7, 2019 work-related accident, but began on that date. Thus, a reasonable basis exists in the record to find that Johnson carried his burden to prove that he did not have disabling symptoms before the accident, and that his disabling symptoms commenced with the accident or thereafter.

Further, the medical records of Dr. Sledge indicate that Johnson was diagnosed with a thoracic back sprain, bulging thoracic intervertebral disc, lumbar sprain, and rib fracture as a result of Johnson's November 7, 2019 work-related accident. The medical records of Neatherlin, D.C. show that Johnson presented with back pain notably in the thoracic area and he was diagnosed with ligament sprains of the thoracic spine; strain of muscle and tendon of the front wall of his thorax; lumbalgia (low back pain); acute post-traumatic headaches; cervical, thoracic and lumbar muscle spasms; right shoulder pain; and segmental and somatic dysfunction of his cervical region. Neatherlin also related these pains and injuries to Johnson's reported work-related accident. Therefore, a reasonable basis exists in the record to find that Johnson carried his burden to present other evidence that points to a connection between the accident and beginning of his disabling symptoms.

Lofton Staffing points out that neither Dr. Sledge nor Neatherlin had any information about Johnson's November 3, 2019 ER visit, and, as such, their medical records are not competent evidence. While it may be accurate that neither knew of the ER visit four days prior, our review of the records from Johnson's November 3, 2019 ER visit indicates that Johnson's complaint was pain in his lower back, but he

9

makes no mention of pain in the cervical or thoracic area. Further, the records of the November 3, 2019 ER visit show no diagnosis of a fractured rib or any ligament sprains. The records merely reveals a diagnosis of "muscle strain" to Johnson's "lower back," and Johnson was sent home with pain medication. The ER physician did not restrict Johnson in any manner, and he went to work just four days after appearing "normal" according to both the testimony of he and his wife prior to the November 7, 2019 work-related accident.

Additionally, Lofton Staffing's choice of orthopedic surgeon, Dr. Alexander Michael, stated in his March 16, 2020 medical opinion that Johnson's back pain and rib fracture were causally related to his work accident when he opined that claimant exacerbated a pre-existing back injury of November 7, 2019, specifically referencing Johnson's purported injuries sustained on November 3, 2019, which are at issue in this appeal. Dr. Michael also placed restrictions upon Johnson and agreed that the thoracic MRI recommended by Dr. Sledge was medically necessary.

Accordingly, we find no merit to Lofton Staffing's assertions that Johnson failed to carry his burden to prove causation in this case. A reasonable basis exists in the record for the WCJ to find that Johnson proved causation.

*IV. Indemnity Benefits*

Lofton Staffing contends that the WCJ erred in finding Johnson was owed indemnity benefits from November 14, 2019, to January 7, 2020. The basis of Lofton Staffing's contention is that a medical doctor releasing Johnson for full duty the day of the accident, November 7, 2019, outweighs a family nurse practitioner (FNP) placing work restrictions on Johnson a week later, November 14, 2019, because a medical doctor is "more specialized" than an FNP citing *La. Ins. Guar. Ass'n v. Weller*, 07-571 (La.App 1 Cir. 11/2/07), 977 So.2d 29.

10

Our supreme court, in *Clay v. Our Lady of Lourdes Reg'l Med. Ctr.* 11-1797, p. 4 (La. 5/8/12), 93 So.3d 536, 538-39, stated:

> The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793 (La.1/9/11), 56 So.3d 170, 174; *Pinkins v. Cardinal Wholesale Supply, Inc.*, 619 So.2d 52, 55 (La.1993). La. R.S. 23:1221(3)(a) provides that an employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn 90% or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. *Poissenot*, 56 So.3d at 174; *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La.7/1/97), 696 So.2d 551, 556. Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); *Poissenot*, 56 So.3d at 174; *Banks*, 696 So.2d at 551.

Here, Dr. Francisco Silva, a Family Medicine Specialist, saw Johnson on the date of the accident, a Thursday, and checked a box in the medical records that states, "Full Duty Release." However, in looking to the records of Dr. Silva from that date, there are also notes wherein it states that Johnson's work status is "Unspecified at this Time." Finally, there is a handwritten note that states, "Full Duty Follow-up on Monday."

Thereafter, on the next day, Johnson presented to AHS Walk-in Clinic wherein his complaint was constant aching toward his back right side and he rated the severity of the pain as a 5 out of 10. Johnson was diagnosed with a fractured rib on his right side after diagnostic tests were interpreted. According to Johnson, the attending physician did not restrict him, but instructed him to simply follow up with his primary care provider.

Heeding the instructions from the physician at AHS Walk-in Clinic, on November 14, 2019, Johnson followed up with his primary care provider, Southwest Louisiana Primary Health. There, he was seen by Darin Lastrapes, FNP, and x-rays were ordered for Johnson's thoracic and lower spine. Finally, a work note was given placing Johnson on modified duty. Thus, the WCJ found that Johnson carried his burden to prove entitlement to indemnity benefits as of November 14, 2019, via medical evidence from a qualified medical provider having placed restrictions on his work status due to this work-related injury. The medical records of Johnson's visit to Southwest Louisiana Primary Health further support this finding.

Thereafter, the burden shifted to Lofton Staffing to prove that Johnson was physically able to work or that they offered him a job that fit the modified duty restrictions placed by Lastrapes. The WCJ found that Lofton Staffing failed to carry that burden. We agree.

Accordingly, we find no error by the WCJ in awarding indemnity benefits to Johnson from November 14, 2019, through January 7, 2020. There is no evidence in the record that Lofton Staffing ever controverted the findings of Lastrapes, and instead chose to rely on medical evidence taken the day of the alleged accident and ignore more recent medical evidence taken a week later, after which Johnson asserted that he was continuously in pain for that week.

V.    *Penalties and Attorney's Fees*

Lofton Staffing's final four assigned errors deal with the propriety of the WCJ's judgment assessing penalties for its failure to pay Johnson indemnity benefits from November 14, 2019, to January 7, 2020, and penalties and attorney's fees for its failure to pay Johnson indemnity benefits from March 10, 2020 through March16, 2020, to approve a thoracic MRI, and to pay a chiropractor's bill.

Louisiana Revised Statutes 23:1201 provides, in pertinent part:

F. Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:

. . . .

2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

We find no error in the assessment of the penalty for Lofton Staffing's failure to pay weekly indemnity benefits from November 14, 2019, through January 7, 2020. The basis for Lofton Staffing's denial of benefits was the argument that a doctor's opinion outweighs that of a nurse practitioner. Such a blanket statement disregards a multitude of factors, such as when the medical provider saw the patient. As such, we find no error by the WCJ in assessing a penalty against Lofton Staffing for denying Johnson indemnity benefits from November 14, 2019, to January 7, 2020.

Next, Lofton Staffing argues that the WCJ erroneously assessed a penalty and awarded attorney's fees for its failure to pay Johnson indemnity benefits from March 10, 2020 through March 16, 2020. It is not disputed that Lofton Staffing did not pay

Johnson benefits from March 10, 2020 through March 16, 2020. Lofton Staffing's argument is that it cannot be held accountable for penalties and attorney's fees past the date of Johnson's deposition, February 14, 2020, according to the WCJ's finding that it had enough information to reasonably allege fraud by Johnson. This argument mischaracterizes the WCJ's finding.

The WCJ found that no penalty or attorney's fees were warranted under La.R.S. 23:1201(I) because Lofton Staffing had enough information to allege fraud by Johnson effective March 16, 2020. However, the WCJ did award penalties and attorney's fees for failure by Lofton Staffing to failure to follow La.R.S. 23:1201(F). Thus, we find no merit to Lofton Staffing's argument and no error by the WCJ in assessing Lofton Staffing with a penalty and awarding Johnson attorney's fees for its failure to pay Johnson benefits from March 10, 2020 through March 16, 2020.

Regarding the penalty and attorney's fees awarded for Lofton Staffing's failure to approve Johnson's thoracic MRI and Johnson's bill from his chiropractor, we find no error by the WCJ. Dr. Sledge recommended that Johnson undergo a thoracic MRI on January 14, 2020. Lofton Staffing denied this request on February 27, 2020. The necessity of the recommended thoracic MRI was agreed to by Lofton Staffing's choice of orthopedic surgeon, Dr. Michael, on March 16, 2020. Furthermore, Lofton Staffing produced no medical evidence contesting the necessity of Johnson's prescribed medical treatment by one of his healthcare providers, his chiropractor.

Lofton Staffing again contends that its denial of both was based on its allegation of fraud and the WCJ's finding that it had enough information to reasonably alleged fraud. As stated previously, this argument is without merit.

14

Accordingly, we find no error by the WCJ in assessing penalties and awarding attorney's fees to Johnson bases on these two issues.

Johnson, in his sole assignment of error, asserts that the WCJ erred by failing to award an additional penalty and additional attorney's fees pursuant to La.R.S. 23:1201(I). We find this assignment to be without merit.

The WCJ found that Lofton Staffing had a reasonable basis for alleging fraud. This finding is supported by the medical records from AHS Walk-in Clinic, where Johnson sought treatment on November 8, 2019. Those records note Johnson's visit just a few days prior wherein it was noted that Johnson was seen on November 3, 2019, "for the same problem." This finding by the WCJ is also supported by the deposition testimony of Johnson that he did not think the previous back pain from just days before the accident warranted being revealed. While the WCJ ultimately found no fraud by Johnson, this finding is not legally irreconcilable with the WCJ's finding that Lofton Staffing originally had a reasonable basis for alleging fraud, and, as such, was not subject to penalties and attorney's fees under La.R.S. 23:1201(I). Accordingly, we find no merit to Johnson's assigned error.

## ANCILLARY MATTER

Johnson answers Lofton Staffing's appeal requesting additional attorney fees for work done on appeal. We grant this request.

Generally, protection of a judgment on an appellate level that includes attorney's fees is a basis to award attorney's fees for work done on appeal to protect that judgment. *Wilczewski v. Brookshire Grocery Store*, 08-718 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170.

Here, Johnson was awarded attorney's fees by the WCJ in the amount of $8,000.00 and has successfully defended that judgment. Given this line of reasoning, we award Johnson $5,000.00 for work done on appeal.

## CONCLUSION

Lofton Staffing Services, Inc. raises nine assignments of error asserting the WCJ erred in awarding Leroy Johnson indemnity benefits and attorney's fees and assessing penalties against it. We find no merit as to any of the nine assigned errors.

Further, Leroy Johnson raises one assigned error. Likewise, we find no merit to this assigned error.

Finally, Leroy Johnson requests additional attorney's fees for work done on appeal. We grant this request in the amount of $5,000.00

We assess all costs of this appeal to Lofton Staffing Services, Inc.

**AFFIRMED AND RENDERED.**