WHIPPLE, J.
Lin this workers’ compensation suit, claimant, Edward Blake, and his employer, Turner Industries Group, LLC (“Turner”), appeal from a judgment of the OWC. For the following reasons, the judgment of the OWC is affirmed.
FACTS AND PROCEDURAL HISTORY
Edward Blake, who was employed by Turner as a taeker/pipe fitter from June 26, 2007 to April 24, 2009, filed a disputed claim for compensation on January 21, 2010 against Turner. Therein, Blake contended that he was exposed to harmful gases on the job, which resulted in a subsequent lung condition. Blake contended that he became ill in October/November of 2008 when his work environment changed on September 1, 2008, after Hurricane Gustav damaged the Main Shop where he normally worked. According to Blake, he and other workers from the Main Shop were then moved to the Alloy Shop, where he was exposed to toxic fumes from alloy metals, causing him to become ill. Turner denied Blake’s claim that his lung condition was caused by or otherwise aggravated by his work for Turner.
The matter proceeded to trial before the OWC on May 17 and 18, 2011, after which the parties were permitted to file post-trial briefs. On August 19, 2011, the OWC issued an oral ruling from the bench, and on September 19, 2011, the OWC signed a judgment in accordance with its oral ruling accompanied by written reasons.
In rendering its judgment, the OWC concluded that Blake had a lung condition, idiopathic pulmonary fibrosis (“IPF”), which the OWC found was not caused by his employment with Turner. Instead, the OWC found that Blake’s lung condition was temporarily aggravated by his employment as a tacker/pipe fitter with Turner, but his lung condition had returned to its pre-employment clinical state on May 26, 2009. Accordingly, because the temporary aggravation |sof Blake’s lung condition caused Blake to be temporarily totally disabled from January 20, 2009 until May 26, 2009, the OWC awarded Blake temporary total disability benefits (“TTD”) from Turner from January 20, 2009 until May 26, 2009 in the amount of $480.54 per week based upon an average weekly wage of $720.28. The OWC further awarded Blake interest in the amount of 4% on past due TTD benefits from January 20, 2009 until May 26, 2009; awarded Blake reimbursement for related out of pocket medical expenses and treatment from December 17, 2008 until May 26, 2009; and awarded Blake costs incurred in bringing his claim to trial.
Blake filed the instant devolutive appeal, contending that the OWC: (1) manifestly erred in finding that he had returned to his pre-employment clinical state on May 26, 2009.; and (2) legally erred in failing to apply the standard set forth in Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689 in finding that the aggrava *24 tion of his underlying lung condition had ended on May 26, 2009, and that no further indemnity or medical benefits were due.
Turner filed a suspensive appeal from the judgment, contending that the OWC erred: (1) in failing to admit medical records from Earl K. Long Medical Center where Blake was treated two weeks before the discovery deadline; (2) in failing to conclude that Blake suffered from an undifferentiated connective tissue disorder; and (3) in continuing to rely on the IME physician’s opinion after additional evidence was discovered that disproves the temporal relationship alleged.
DISCUSSION
Turner’s First Assignment of Error
Although Turner is the second appellant herein, we note that in its first assignment of error, Turner is contending that the OWC judge made an erroneous evidentia-ry ruling in failing to admit Blake’s medical records from |4Earl K. Long Medical Center into evidence. If a trial court commits an evidentiary error that interdicts its fact-finding process, this court must conduct a de novo review. Thus, any alleged evidentiary errors must be addressed first on appeal, inasmuch as a finding of error may affect the applicable standard of review. Penton v. City of Hammond Police Department, 2007-2352 (La.App. 1st Cir.5/2/08), 991 So.2d 91, 95. As such, we address the evidentiary challenge raised by Turner out of turn.[1]
In its first assignment of error, Turner argues that the OWC erred in not admitting Blake’s medical records from Earl K. Long Medical Center at trial (despite Turner’s concession that it failed to meet the discovery deadline imposed by the OWC in obtaining these records).
In its brief on appeal, Turner contends that Blake presented at Earl K. Long Medical Center for treatment on April 2, 2011. Turner contends that upon learning of this treatment, it sent a notice requesting Blake’s updated medical records to Earl K. Long Medical Center on April 7, 2011. The OWC’s discovery deadline in this matter was April 18, 2011. Nonetheless, on April 19, 2011, Turner issued subpoenas to Dr. Glenn Gomes and Earl K. Long Medical Center seeking the medical records. Blake responded by filing a motion to quash, which the OWC granted, noting that the discovery deadline had lapsed. At trial, the OWC did not allow Turner to introduce the records, but instead allowed Turner to proffer the medical records.
In general, an OWC hearing officer shall not be bound by technical rules of evidence or procedure. LSA-R.S. 23:1317(A). Moreover, LSA-R.S. 23:1310.1(C) authorizes the director of the OWC to adopt reasonable rules and regulations, including the rules of procedure before the hearing officers, according |Bto the procedures established by the Administrative Procedure Act, codified as LSA-R.S. 49:950, et seq. To insure an orderly disposition of cases, it is clear that the hearing officer has much discretion regarding the implementation and enforcement of pretrial procedural rules. Kennedy v. Johnny F. Smith Trucking, 94-0618 (La.App. 1st Cir.3/3/95), 652 So.2d 526, 529. Absent an abuse of this discretion, the decision of the trier of fact will be upheld. Shaffer v. Brand Scaffold Builders, Inc., 2003-0288 (La.App. 1st *25 Cir.12/31/03), 868 So.2d 149, 151, writ denied, 2004-0303 (La.3/26/04), 871 So.2d 355.
Turner undisputedly failed to comply with the discovery deadline imposed by the OWC. Further, Blake contends that at no time did Turner request or seek a waiver of the seven-day waiting period in order to meet the discovery deadline. In any event, the record before us reveals that at the time the matter was scheduled for trial to commence on May 17, 2011, Turner had previously filed a motion to continue an earlier fixing of the trial of this matter. Considering the OWC judge’s responsibility to insure the orderly disposition of cases and the broad discretion afforded it in enforcing pretrial procedure rules, we find no abuse of discretion in refusing to allow the introduction of these records, which were obtained by Turner approximately one week prior to trial, and undisputedly after the experts, treating physicians, and the IME physician in this case had already been deposed without the benefit of being able to review same.[2]
This assignment of error lacks merit.
| fiStandard of Review
In workers’ compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC’s findings of fact is the “manifest error-clearly wrong” standard. Dean v. Southmark Construction, 2003-1051 (La.7/6/04), 879 So.2d 112, 117. Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706, 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable. Robinson v. North American Salt Company, 2002-1869 (La.App. 1st Cir.6/27/03), 865 So.2d 98, 105, writ denied, 2003-2581 (La.11/26/03), 860 So.2d 1139. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Connor v. Family Dollar Store, 2009-1537 (La.App. 1st Cir.3/26/10), 36 So.3d 339, 345, writ denied, 2010-0959 (La.6/25/10), 38 So.3d 344.
During the trial of this matter, the OWC considered the deposition testimony and testimony of Blake, his co-workers and supervisors at Turner, as well as the following experts and physicians: Dr. William J. Nassetta, Turner’s expert in toxicology, internal medicine, and occupational environmental medicine [Proffered testimony]; Dr. Christopher B. Thomas, Turner’s expert in the field of pulmonary medicine, critical care and internal medicine; Dr. Judd E. Shellito, an expert in the field of pulmonary and critical care medicine and the Chief of Section of pulmonary and critical care medicine at the LSU Health Sciences Center, who conducted an independent medical exam of Blake; Herman J. Gibb, |7Ph.P., M.P.H., an epidemiologist and expert in health risks assessments *26 who evaluated Blake’s information and related that to what he knows about welders; and Dr. Glenn M. Gomes, Blake’s treating pulmonologist, who was board certified in pulmonary medicine, critical care medicine, and internal medicine.
After considering all of the testimony and evidence introduced over the course of a two-day trial, the OWC issued written reasons for judgment, wherein it found as follows:
The issue before the Court is whether or not Mr. Blake contracted an occupational disease in the course and scope of his employment with Turner Industries. The Court finds he did not; he has failed to meet his burden of proof; [ie.,] that more probably than not, he contracted his lung condition in the course and scope of his employment with Turner. I base this on the evidence as a whole, but Dr. Shellito’s deposition was a predominate [sic] factor. Dr. Shellito is the state’s IME and my interpretation of his report and deposition is Mr. Blake has an idiopathic pulmonary fibrosis (IPF); this means the physicians are not sure what caused his lung condition. It is an interstitial lung disease, but Dr. Shellito was of the opinion it was not caused by his welding and pipefitting duties while employed by Turner.
There were a lot of factors utilized in concluding the actual diagnosis, which is at the heart of this issue; the lung biopsy itself, per Dr. Shellito, did not support the condition being caused by welding fumes. Also the- fact his lung disease is a restrictive, not an obstructive, disease also negates causation by welding fumes. Dr. Shellito provided the Court with an excellent overview of the case; he had the benefit of all of the physicians’ records and testing as well has having examined Mr. Blake himself.
Dr. Nasetta, Turner’s expert, diagnosed Mr. Blake with an undifferentiated connective tissue disease [UCTD], I am of the opinion the factors as stated by the experts, do not fit this diagnosis. As I reviewed the factors for [UCTD], the presence of an arthritic condition in this case falls short; [ie.,] Mr. Blake’s arthritic condition is trauma related, not systemic. The dry mouth factor is negated by Mr. Blake’s necessary use of an oxygen tank; there are other factors as well which fell short. However, Dr. Nasetta also stated he thought it could be an idiopathic pulmonary fibrosis as found by Dr. Shellito.
Some of the other experts made assumptions concerning his exposure, which the Court found not to be fact-based. The evidence at trial satisfied the Court Mr. Blake’s exposure was well within the OSHA safety requirements and NOT in an enclosed environment, nor was he exposed to the exotic metals as often as he remembered.
|sThe Court finds Mr. Blake’s IPF was aggravated by his occupation as a welder while employed at Turner. Dr. Shellito stated Mr. Blake’s chronic IPF, being associated with restricted physiology, was more likely than not aggravated by his exposure to welding fumes. Every witness, including the safety manager and the other welders, all testified post-Gustav, in the month of September, the alloy bay and power bay were full to capacity and going at full speed. The testimony is consistent that because of Gustav, the main shop had been destroyed, requiring all employees to be reallocated physically to the alloy bay, the power bay and the north yard. The alloy bay and the power bay were the two places Mr. Blake worked. Every possible space was filled to capacity and working at full speed to complete a *27 large order backlogged by Gustav. Both of these bays were about half the size of the main shop. The Court finds that although there was adequate ventilation, the MSDS[3] sheets clearly warn of the same type of symptoms Mr. Blake sustained; nose and throat irritation, shortness of breath, coughing, chest pain and that impaired respiratory function, which Mr. Blake already had, may be worsened. This occurred shortly before his condition became symptomatic; thereby aggravating his pre-existing condition.
The Court finds Mr. Blake’s IPF returned back to its normally progressive state by May of 2009. The aggravation caused by the fumes, once he was removed from the irritant, away from welding, acquired medications, resolved. In May, his treating physician, Dr. Vath,[4] released him to return to work. Mr. Blake could never return to welding because of his [underlying] IPF, but he’d returned to his pre-aggravation state. Dr. [Crosby], on May 26, said Mr. Blake was clinically almost back to normal, he felt good, and wanted to return to work.
The Court finds Mr. Blake is entitled to indemnity benefits from January 20, 2009 to May 26, 2009; the period of his disability related to the aggravation of his IPF. The Court awards medical benefits from his first symptoms, December, 2008 to May 26, 2009. • The Court also awards all costs of litigation to the claimant. Interest is awarded at the rate of 4%.
Turner’s Second Assignment of Error
In its second assignment of error, Turner contends that the trial court manifestly erred in finding that Blake’s lung condition was not the result of an undifferentiated connective tissue disease.
| ⅞At trial, Turner presented the testimony of Dr. Christopher Thomas, Turner’s expert who, after evaluating Blake on one occasion and reviewing his medical records, testified that Blake had an undifferentiated connective tissue disease (“UCTD”). Dr. William J. Nassetta, an occupational environmental medicine physician hired by Turner to assess whether or not Blake’s medical condition was caused or aggravated by his employment with Turner, agreed that Blake had an undifferentiated connective tissue disease. However, Dr. Nassetta had never seen or evaluated Blake. He recognized the diffuse alveolar damage (“DAD”) in Blake’s pathology, which could be associated with the inhalation of welding fumes.
Blake presented the medical records and testimony of his treating pulmo-nologists, Dr. Robert L. Crosby and Dr. Glenn M. Gomes, who both opined, after treating Blake for some time, that Blake had bronchiolitis obliterans organizing pneumonia (“BOOP”) and DAD. Dr. Gomes testified that Blake did not have an underlying connective tissue disease. Further, Dr. Gomes opined that when an underlying connective tissue disease is present, a physical examination is rarely completely normal like in Blake’s case.
An independent medical examination, ordered by the OWC, was conducted by Dr. *28 Judd E. Shellito, who had the benefit of examining Blake and taking a history from him as well as reviewing all of his medical records. Dr. Shellito also had a chest x-ray obtained and a pulmonary function test performed on Mr. Blake in connection with his examination. Dr. Shellito opined that Blake clearly has BOOP, and BOOP has many causes, but when BOOP is idiopathic, a cause cannot be identified. In his opinion, Blake has a pulmonary interstitial lung disease, which is a disorder that affects the interstitium of the lung. Dr. Shellito further explained that interstitial diseases are typically associated with fibrosis or scarring of the lungs. They are also often associated with restrictive defects on |inthe pulmonary functioning test as seen with Blake. Blake’s lung biopsy showed a pattern of organized diffuse alveolar damage with a minor component of prolifera-tive bronchiolitis as indicated by Drs. Crosby and Gomes.
In relying on Dr. Shellito’s opinion that Blake suffered from IPF, the OWC noted:
Dr. Shellito provided the Court with an excellent overview of the case; he had the benefit of all of the physicians’ records and testing as well has having examined Mr. Blake himself.
Turner argues that the OWC erred in accepting the testimony of the IME, Dr. Shellito, and Blake’s treating physician, Dr. Gomes, and in disregarding or rejecting the opinions of Drs. Thomas and Nas-setta. The OWC was presented with conflicting testimony as to Blake’s medical condition. On review of the record herein, including the extensive medical evidence and testimony presented in this matter, we find the OWC’s determination was reasonable and is amply supported by the record. Accordingly, the OWC’s reasonable evaluations of credibility and inference of fact will not be disturbed on review. See Connor v. Family Dollar Store, 36 So.3d at 345.
We find no merit to this assignment.
Blake’s First and Second Assignments of Error/Turner’s Third Assignment of Error
In these assignments of error, Turner contends that the OWC manifestly erred in finding that Blake’s pre-existing lung condition was aggravated by his occupation as a welder with Turner Industries, while Blake contends that the OWC committed manifest error by finding that the aggravation of Blake’s IPF condition had ceased and had returned to its pre-employment clinical state on May 26, 2009. Blake further argues that the OWC committed legal error in failing to apply the standard set out in Peveto v. WHC Contractors, 93-1402 (LaF/14/94),11 630 So.2d 689. After careful review, we find no merit to either party’s assertions.
In determining whether an accident caused the aggravation of a claimant’s condition in workers’ compensation matters, the Louisiana Supreme Court instructed in Peveto, that an employee has the burden of establishing a causal link between the accident and the subsequent disabling condition. Peveto v. WHC Contractors, 630 So.2d at 691. Where an employee suffers from a pre-existing medical condition, he may still prevail if he proves that the accident “aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed.” Peveto v. WHC Contractors, 630 So.2d at 691, citing Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324 (La.1985). Once the employee has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the trier of fact that it is more probable than not that the work injury did not accelerate, aggravate, or *29 combine with the pre-existing disease or infirmity to produce the employee’s disability. Walton v. Normandy Village Homes Association, Inc., 475 So.2d at 325. Moreover, in making such determinations, medical testimony, albeit significant, is not necessarily conclusive as to the issue of causation, which remains an ultimate fact to be decided by the court after weighing all of the evidence. Peveto v. WHC Contractors, 630 So.2d at 691, citing Haughton v. Fireman’s Fund American Insurance Company, 355 So.2d 927, 929 (La.1978).
In determining that Blake’s IPF was aggravated by his exposure to welding fumes, the OWC relied on Dr. Shellito’s testimony that it was more likely than not that Blake’s exposure to the welding fumes aggravated his underlying lung condition because in this particular case, even though the welding fumes did not cause his disease, there was a temporal relationship between the exposure and his | ^symptoms. Dr. Shellito added that it is well-recognized that exposure to welding fumes aggravates underlying lung disorders.
Moreover, the OWC clearly relied on the substantial evidence presented by Blake to establish that the welding fumes he was exposed to at Turner were harmful, which included the testimony of Turner’s Safety Manager, Blake, Dr. Herman Gibb, and the other welders at Turner, all of whom testified about the working conditions post-Gustav, when the shops were consolidated, as well as MSDS sheets, which warned of the same symptoms that Blake exhibited. In addition to the testimony by Dr. Shellito noted above, Dr. Gomes also testified that if Blake did have a connective tissue disease as argued by Turner, exposure to fumes would make his condition “a lot worse.” Accordingly, on review, we find no manifest error in the OWC’s ultimate determination that Blake’s exposure to the welding fumes aggravated his underlying lung condition.
With reference to the OWC’s determinations as to whether and when Blake’s condition had returned to its pre-aggravation state, the OWC relied on the testimony of Blake’s treating pulmonologist, Dr. Robert L. Crosby, noting as follows:
The Court finds Mr. Blake’s IPF returned back to its normally progressive state by May of 2009. The aggravation caused by the fumes, once he was removed from the irritant, away from welding, acquired medications, resolved. In May, his treating physician, Dr. Vath,[5] released him to return to work. Mr. Blake could never return to welding because of his [underlying] IPF, but he’d returned to his pre-aggravation state. Dr. [Crosby], on May 26, said Mr. Blake was clinically almost back to normal, he felt good, and wanted to return to work.
Dr. Crosby’s records reflect that he treated Blake from January 2009 to August 2009, and had diagnosed Blake with bronchiolitis obliterans organizing pneumonia (“BOOP”) and diffuse alveolar damage (“DAD”). On May 26, 2009, |isafter evaluating Blake’s condition on that visit, Dr. Crosby noted that Blake “[f]eels good” and “wants to go back to work.” He further noted, “[i]nstead of pipefitting/welding he wants to drive trucks,” and that he is “clinically almost back to normal.” Accordingly, Dr. Crosby then released Blake to return to work with the restriction that *30 he not work around dust, fumes, or chemicals.
Dr. Gomes, who became Blake’s treating pulmonologist in January of 2010 after Dr. Crosby closed his practice, agreed with Dr. Crosby’s diagnosis of BOOP and DAD. Dr. Gomes also agreed that Blake was able to return to work with the restriction that he be in a controlled temperature environment with no dust or fumes. Dr. Gomes also concluded that he would not be able to perform moderate manual labor.
In support of his assignment of error challenging the merits of the OWC’s ruling, Blake notes that Dr. Shellito, the IME physician, testified that although Blake may have felt better, the “global pattern” with his underlying condition was one of worsening lung function. However, with regard to Blake’s ability to work, Dr. Shel-lito conceded on cross examination that Blake had not informed him that he had, in fact, returned to work since January of 2009.
Blake also points to the testimony of Dr. Christopher Thomas, Turner’s expert who, after evaluating Blake on one occasion and reviewing his medical records, testified that he did not think Blake had BOOP, but instead had an underlying connective tissue disease. With reference to Blake’s argument that the OWC erred in finding that he had returned to his pre-employment clinical state, Blake contends that Dr. Thomas “noted he thought there was some improvement, but then Mr. Blake began to decline.” On careful review of Dr. Thomas’ deposition testimony, however, we note that in the testimony relied upon by Blake, Dr. Thomas qualified his response, as follows:
[Counsel]:
|14So have you seen the positive reaction that you would expect in Mr. Blake’s condition with use of the steroids?
Dr. Thomas:
I personally don’t know if I can ascribe a significant clinical status based on the evidence that I have. I do know he demonstrated improvement from the time of the initial diagnosis and then subsequently had some form of decline. There is a period of time that’s unaccounted for within the clinical evaluation by the physicians. I would be unable to state at that exact time, because I didn’t see him, and he was unable to provide that interval with me to clarify.
Turner notes on appeal that Blake passed DOT physicals taken on July 6, 2009, and on October 16, 2009, after his lung biopsy, which both provided that Blake had a normal lung and chest examination. Further, in addition to Dr. Crosby’s findings, Dr. Ceruti’s records of May 5, 2009, state that “Blake was doing ok off steroid.” Further, as noted by Turner, following Blake’s release to return to work by Dr. Crosby in May of 2009, Blake did not seek further treatment for his injuries until approximately eight months later on January 28, 2010.
Considering all of the above and after review of the record in its entirety, we recognize that there are some conflicts in expert and medical testimony. Nonetheless, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact may not be disturbed upon review in the absence of manifest error, even though an appellate court may feel that its own evaluations and inferences are as reasonable. See Robinson v. North American Salt Company, 865 So.2d at 105. On the record before us, we find no manifest error in the OWC’s finding that the aggravation of Blake’s IPF had returned to his pre-employment clinical state on May 26, 2009.
*31 Moreover, to the extent that Blake contends that Peveto requires the employer to show that a claimant’s aggravation ended, and thus, that the OWC herein erred in finding that the aggravation of Blake’s underlying condition |,¿ended, absent a showing from Turner that the aggravation ended, we likewise find no merit.
At the outset, we note that Peveto is factually distinguishable from the instant case. In Peveto, the claimant suffered from a neurological disorder, which claimant’s treating physician testified “might not be progressive at all.” Peveto v. WHC Contractors, 630 So.2d at 692. The court was therefore able to determine that absent the aggravation from his employment-related accident, his condition may not have progressed at all. Hence, the court found that the evidence presented by claimant created a presumption of causation, which was not rebutted or contradicted by any evidence from the employer. Peveto v. WHC Contractors, 630 So.2d at 692.
Unlike the facts in Peveto, the evidence in the instant case established that Blake’s underlying IPF was a progressive condition. Also, in this case, Turner argued and presented contradicting rebuttal evidence and testimony to show that Blake’s condition was not aggravated by employment conditions at Turner, whereas the employer in Peveto failed to do so. In Peveto, the evidence clearly showed that the aggravation of claimant’s condition did not return to its pre-aggravation state, whereas there was evidence in the instant case which, if accepted as true by the trial court, would show that the aggravation of Blake’s underlying condition had returned to its pre-aggravation state.
As discussed above, however, after weighing and considering the conflicting evidence herein, the OWC determined that Blake presented sufficient evidence to establish that it was more probable than not that his underlying IPF was aggravated by his exposure to welding and metal fumes at Turner. Further, we concluded above that the OWC correctly determined that the aggravation of Blake’s underlying condition had ceased in that Blake’s condition returned to its pre-aggravation state based on its consideration and resolution presented of the | ^conflicting testimony and evidence presented herein by Blake and Turner. We again note we find no error in these determinations. Finally, we find no merit to Blake’s argument that the OWC committed legal error under Peveto in finding that the aggravation of Blake’s underlying condition ended or returned to its pre-aggravation state.
These assignments of error by Turner and Blake lack merit.
CONCLUSION
For the above and foregoing reasons, the September 19, 2011 judgment of the OWC is affirmed. Costs of this appeal are assessed equally against the appellants,' Edward Blake and Turner Industries Group, LLC.
AFFIRMED.
McClendon, j., concurs.

. Likewise, for ease of discussion, we hereafter address Turner’s other assignments of error out of turn.

. The only expert who had the benefit of reviewing these records prior to trial, which commenced on May 17, 2011, (but after his report of April 11, 2011) was Dr. William J. Nassetta, Turner's occupational environmental medicine physician. Although Turner contends that the updated medical records it seeks to introduce are relevant evidence of Blake’s medical treatment and condition, in Dr. Nassetta's proffered testimony concerning these records, he stated that his review of Blake’s medical records from Earl K. Long did not change his opinion concerning Blake’s condition. Thus, we find no error.

. "MSDS” are material safety data sheets.

. Both Turner and Blake concede that the OWC misspoke as Blake was never seen by a "Dr. Vath.” Instead, as the parties note, the May 26, 2009 visit with Blake's treating physician referred to by the OWC in her reasons for judgment was with Blake’s treating pul-monologist, Dr. Robert L. Crosby. Notably, Dr. Crosby closed his practice on or about August of 2009, and was unable to be located for a deposition.

. As set forth in footnote 2, both Turner and Blake concede that the OWC misspoke, as Blake was never seen by a "Dr. Vath,” and that the treating physician referred to by the OWC in her reasons for judgment was with Dr. Crosby, Blake’s treating pulmonologist at the time.