# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 22-117


**MARK MCDONNELL**

**VERSUS**

**RENEGADE OIL TOOLS, INC.**
**STONETRUST COMMERCIAL INS. CO.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 19-183 C/W 19-184 C/W
ANTHONY PAUL PALERMO, WORKERS COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## GARY J. ORTEGO
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Billy Howard Ezell, Jonathan W. Perry, and Gary J. Ortego, Judges.


**AFFIRMED.**

**Harry Karl Burdette**
**The Glenn Armentor Law Corp.**
**300 Stewart St.**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Mark McDonnell**

**Phillip Edward Foco**
**Bienvenu, Bonnecoze, Foco & Viator, LLC**
**4210 Bluebonnet Blvd**
**Baton Rouge, LA 70809**
**(225) 388-5600**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Stonetrust Commercial Ins. Co.**
    **Point Blue Water Systems Inc.**
    **Brammer Machine Shop, Inc.**
    **Renegade Oil Tools, Inc.**
    **Emerging Properties, LLC**

**ORTEGO, Judge.**

In this workers' compensation billing dispute case, a surgeon performed five pre-authorized surgeries using surgical implants over the course of sixteen months. The payor insurance company refused to reimburse the surgeon for the amount invoiced by the manufacturer for the surgical implants claiming the amounts charged were not reasonable.

The surgeon service filed five separate 1008 Disputed Claims for Compensation that were then consolidated for trial and this appeal. A trial was held before a workers' compensation judge (WCJ). Following the trial, the WCJ found that the insurance company owed the surgeon full reimbursement for the surgical implants used in the surgeries. The insurance company appeals.

**FACTS AND PROCEDURAL HISTORY**

Dr. Mark McDonnell, a licensed orthopedic surgeon with a specialty in spine surgery, is the owner of Louisiana Spine Surgery. Between December of 2016 and April of 2018, Dr. McDonnell performed five surgeries on injured employees whose injuries were covered under the Louisiana Workers Compensation Act. Prior to performing any of these surgeries, Stonetrust Commercial Insurance Company (Stonetrust) pre-authorized Louisiana Spine Surgery and Dr. McDonnell to perform these surgeries. Stonetrust is the insurer and payor for the surgeries performed on the injured employees.

At the heart of the dispute before this court is a Louisiana Workers' Compensation Fee Schedule provision that does not set a specific reimbursement rate for the surgical implants used in the surgeries performed by Dr. McDonnell. Louisiana Administrative Code, Title 40, Part I., § 5115, Subsection (15), entitled "Plastic and Metallic Implants" states, "Plastic and metallic implants or non-autogenous graft materials supplied by the physician are to be reimbursed at invoice

cost plus 20 percent. An invoice with the cost of the material must be submitted to the C/SIE with the bill."

After these surgeries were performed, Dr. McDonnell submitted the invoices he received from the manufacturers of the surgical implants and added the statutory allowed twenty percent fee for each surgery. Stonetrust refused to pay the amount of the manufacturers' invoices, instead choosing to pay what it deemed was a reasonable amount for these implants.

Dr. McDonnell filed separate disputed claims for compensation against Stonetrust for each patient and surgery. These filings were consolidated for trial and appeal.

Trial was held on June 1, 2021. An oral ruling was issued by the WCJ on July 23, 2021. The WCJ found that the amounts the manufacturers invoiced Dr. McDonnell, for the implants, were reasonable and that Stonetrust owed Dr. McDonnell full reimbursement for those invoices. Stonetrust appeals, assigning three errors.

## ASSIGNMENTS OF ERROR

1. The [WCJ] committed legal error by failing to perform a reasonableness analysis that consisted of determining the usual and customary price of the implants at issue in this litigation, as required by [La.R.S.]23:1203(B), the Louisiana Supreme Court in *Lafayette Bone & Joint v. Louisiana United Business, SIF*, the Third Circuit in *Iberia General Hospital v. St. Mary Sugar Cooperative, Inc.*, and by the First Circuit in *Johnson Bros. Corp. v. Thibodaux Regional Medical Center.*

2. The [WCJ] committed manifest error and its decision was clearly wrong in finding that the prices charged by Dr. McDonnell for the implants at issue were reasonable.

2

3. The [WCJ] committed manifest error and its decision was clearly wrong in failing to find that the reimbursement price recommended by Mr. John Miley, and paid by Stonetrust, satisfied Stonetrust's obligation to reimburse Dr. McDonnell for the implants at issue in this litigation.

## LAW AND DISCUSSION

*I.    Standard of Review*

The manifest error standard of review is the correct standard to be applied by the appellate court in workers' compensation cases. *Dean v. Southmark Construction*, 03-1051 (La 7/6/04), 879 So.2d 112. Thus, the WCJ's findings will not be set aside absent a showing that they are clearly wrong. *Alexander v. Pellerin Marble & Granite*, 93-1698 (La 1/14/94), 630 So.2d 706. "The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Blake v. Turner Industries Group, LLC*, 12-140, p. 6 (La.App. 1 Cir. 9/21/12), 111 So.3d 21, 25.

*Young v. CB&L, LLC*, 20-619, p. 4 (La.App. 3 Cir. 10/27/21), 329 So.3d 905, 909.

"Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) *(citing Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978)).

When findings are based on determinations regarding the credibility of witnesses, the manifest error – clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.

*Id.*

Nevertheless, "when legal error interdicts the fact-finding process in a workers' compensation case, the manifest error or clearly wrong standard of review no longer applies and *de novo* review of the matter is required." "Likewise, interpretation of statutes pertaining to workers' compensation is a question of law and warrants de novo review to determine if the ruling was legally correct."

3

*Johnson v. Office of Tourism*, 19-853, p. 5 (La.App. 3 Cir. 5/6/20), 297 So.3d 1070, 1073-74 (citations omitted).

II.     *Violation of La.R.S. 23:1203(B)*

In its first assigned error, Stonetrust asserts that the WCJ committed legal error when he failed to perform a reasonableness analysis that consisted of determining the usual and customary price of the implants at issue in this litigation. Stonetrust asserts that the WCJ failed to conduct such an analysis as required by La. R.S. 23:1203(B), and precedent established in *Lafayette Bone & Joint v. Louisiana United Business, SIF*, 15-2137, 15-2138 (La. 6/29/16), 194 So.3d 1112, and *Iberia General Hospital v. St. Mary Sugar Cooperative, Inc.*, 16-532 (La.App.3cir. 11/2/16), 206 So.3d 406.

Louisiana Revised Statutes 23:1203(B) states,

> The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less. Any out-of-state provider is also to be subject to the procedures established under the office of workers' compensation administration utilization review rules.

The Louisiana Supreme Court in, *Lafayette Bone & Joint Clinic*, 15-2138, 194 So.3d at 1121-22, (footnote omitted) (Alterations in original), iterated:

> Although not defined in the workers' compensation law, "mean" is used in Section 1203 in the sense of a mathematical average and, as stated in Section 1203, such allowable reimbursement is limited by LSA–R.S. 23:1034.2, which provides for the establishment and promulgation of a "reimbursement schedule" to set forth such average costs for medical expenses. *See Authement v. Shappert Engineering*, 02-1631 at p. 10, 840 So.2d at 1188 ("[T]he obligation of an employer to pay medical expenses is limited to . . . an amount determined under the reimbursement schedule published annually pursuant to LSA–R.S. 23:1034.2.").

4

With regard to the mean, or average, of the usual and customary charges for drugs, Paragraph (C)(1) of LSA–R.S. 23:1034.2 states: "The reimbursement schedule shall include charges limited to *the mean* of the *usual and customary charges* for such care, services, treatment, *drugs*, and supplies." (Emphasis added.) Paragraph (D) of LSA–R.S. 23:1034.2 directs that "[f]ees in excess of the reimbursement schedule shall not be recoverable against the employee, employer, or workers' compensation insurer." Left open by LSA–R.S. 23:1034.2(D)'s restriction is the possibility that medical fees, even though falling within the amounts set forth in the reimbursement schedule, may be deemed unreasonable, unnecessary, or not "usual and customary," and therefore not subject to compensation under certain circumstances.

Furthermore, the expression of legislative intent set forth in LSA–R.S. 23:1020.1 makes it clear that the reasonableness of medical costs is an important consideration. *See* LSA–R.S. 23:1020.1(C) ("Legislative intent. The legislature finds all of the following: . . .(2) To facilitate injured workers' return to employment at a *reasonable* cost to the employer.") (emphasis added). *See also Church Mutual Insurance Company v. Dardar*, 13-2351, p. 14 (La.5/7/14), 145 So.3d 271, 281 ("According to the plain words of [LSA–R.S. 23:1203], an injured employee is not entitled to payment for all future medical treatment occasioned by an accident; rather, the employer's liability is limited to that which is necessary. Thus, in order to state a cause of action for and recover medical expenses authorized by the statute, an injured worker must require medical expenses that are *reasonably necessary* for the treatment of a medical condition caused by a work injury.") (emphasis added).

Stonetrust next cites *Iberia Geneneral Hospital,* 16-532, 206 So.3d 406. According to Stonetrust, *Iberia Gen. Hosp.* stands for the proposition that "where the reimbursement amount under the fees schedule is determined by a formula, as opposed to a specific reimbursement schedule or amount, the Court is required to consider the reasonableness of the charges."

We agree with Stonetrust that a WCJ is to consider whether charges for medical treatment are reasonable. However, our review of the record indicates that the WCJ did, in fact, consider whether the amount charged for the medical implants by the manufacturer to Dr. McDonnell was reasonable. The WCJ, citing *Lafayette Bone & Joint Clinic,* 194 So.3d 1112, and La. R.S.23:1203(B), conducted an analysis

of the facts of the case, and applied those to conclude "that it has not been shown that the medical implants were priced at such an outrageous amount that they would not be reasonable within the meaning of the statute," referring to the Louisiana Medical Guidelines.

As such, we find no merit to Stonetrust's assertion that the WCJ violated La.R.S. 23:1203(B). It is clear that there is sufficient evidence in the record to suggest that the WCJ did contemplate and conduct an analysis as to whether the costs of these medical implants were reasonable.

### III.    *Reasonableness of Implant Costs*

Next, Stonetrust alleges that the WCJ committed manifest error and his decision was clearly wrong in finding that the prices charged by Dr. McDonnell for the implants at issue were reasonable.  This allegation is misguided and lacks merit.

Louisiana Administrative Code, Title 40, Part I., § 5115, Subsection (15), entitled "Plastic and Metallic Implants" states, "Plastic and metallic implants or non-autogenous graft materials supplied by the physician are to be reimbursed at invoice cost plus 20 percent. An invoice with the cost of the material must be submitted to the C/SIE with the bill."

This assignment of error is misguided because Stonetrust argues and states, "prices charged by Dr. McDonnell."  This implies that Dr. McDonnell played a role in determining the manufacturers' prices in their invoices for the implants.  We note that there is no evidence in the record that Dr. McDonnell had any involvement in setting the manufacturers' prices for these implants, and, in fact, all evidence presented appears to be to the contrary.  According to the testimony of Dr. McDonnell, and his office manager, his office simply took the manufacturers' invoices, and relayed those invoices to Stonetrust for payment.  The prices charged

6

by the manufacturers were negotiated by a third party, not Dr. McDonnell or anyone in his office.

Additionally, we find ample evidence in the record to support the WCJ's finding that the manufacturers' prices for the implants were reasonable. First, it is undisputed that Stonetrust pre-authorized each of these surgeries, including that the medical implants and billing were to be facilitated through Dr. McDonnell's office. Next, there is no dispute that Dr. McDonnell simply forwarded and turned in the invoice his office received from manufacturers for the implants used in the surgeries. He had no control of what the manufacturers' invoices entailed. His office manager testified that his office had no control of the prices charged for the implants, and that they owed what the manufacturer charged for the implants used in each of these pre-authorized surgeries.

Finally, Stonetrust relies heavily on the testimony of John Miley, a reimbursement consultant the WCJ recognized as an expert in medical coding, reimbursement, and fees schedules. Herein, Miley admitted in his testimony that his cost comparisons did not include the brand of implant used by Dr. McDonnell in these surgeries. Additionally, Dr. McDonnell testified and articulated that the reason he used these implants was because he felt they were superior to other products on the market, and that they gave an advantage to his patients by increasing their likelihood of experiencing reduced pain and not needing possible future surgeries.

Given the above, we cannot say that the WCJ was manifestly erroneous in finding that the charges for the implants used in these surgeries were reasonable. As such, we find this assignment of error lacks merit.

*IV.  Reasonableness of Miley's Findings*

In its final assigned error, Stonetrust contends that the WCJ committed manifest error and its decision was clearly wrong in failing to find that the reimbursement price recommended by Mr. John Miley, and paid by Stonetrust, satisfied Stonetrust's obligation to reimburse Dr. McDonnell for the implants at issue in this litigation.

> Generally, the trier of fact is not bound by expert testimony, but is to hear and weigh expert testimony in the same manner as any other evidence. Reasonable and well-founded opinion should be considered. The weight to be given expert testimony is dependent upon the professional qualifications and experience of the expert and especially on the facts which that expert's opinion is based.

*Kolwe v. Civil and Structural Engineers, Inc.*, 18-398, 18-399, p. 29 (La.App. 3 Cir. 2/21/19), 264 So.3d 1262, 1282, *writ denied*, 19-483 (La. 5/20/19), 271 So.3d 1269, (quoting *Head v. Head,* 30-585 (La.App.2 Cir. 5/22/98), 714 So.2d 231, 234).

After reviewing the record, we find a reasonable basis for the WCJ giving Miley's expert opinion little weight.  Throughout Miley's testimony he explained that the basis of his analysis for performing his job is to look at what Medicare pays for certain diagnoses.  While he did testify that he did not use any cases of Medicare surgeries in his calculations, Medicare, which simply pays a lump sum for a similar surgery with no regard to the actual cost of the implants, is not relevant to this matter. Next, Miley testified that he could find no cost comparisons for the brand of implant used by Dr. McDonnell in these surgeries.  Then, Miley tried to explain that a screw is a screw, and attempted to imply that all implants of this type are similar due to FDA approval of similar products.  However, Dr. McDonnell's testimony was very clear that he chose this brand of implant due to their superiority over the brand products used in Miley's analysis.  Finally, Miley testified that his business, Level

8

Solutions, LLC, is paid on a contingency basis as to the amount Miley can convince a healthcare provider to accept less than the fee schedule calls for to be paid.

Given the above, we find no error by the WCJ in giving Miley's testimony little weight. A reasonable basis exists in the record for the WCJ to disregard the reimbursement price recommended by Miley and to support the WCJ's finding that Stonetrust has an obligation to reimburse Dr. McDonnell for full cost of the implants at issue in this litigation.

## CONCLUSION

Stonetrust Commercial Insurance Company raises three assignments of error asserting the WCJ erred in finding that it owed reimbursement to Louisiana Spine Surgery, owned by Dr. Mark McDonnell, and paid by Louisiana Spine Surgery for surgeries performed by Dr. Mark McDonnell. We find no merit as to any of the three assigned errors. For the foregoing reasons, the judgment of the WCJ is affirmed. We assess all cost of this appeal to Stonetrust Commercial Insurance Company.

**AFFIRMED.**