# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-231

JOSEPH DEMAREST

VERSUS

NI WEDLING SUPPLY, LLC AND
THE GRAY INSURANCE COMPANY

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 19-05205
HONORABLE JONATHAN W. BROWN
WORKERS' COMPENSATION JUDGE

**********

## CHARLES G. FITZGERALD
## JUDGE

**********

Court composed of Sylvia R. Cooks, Chief Judge, and Charles G. Fitzgerald and
Gary J. Ortego, Judges.

**AFFIRMED.**

**Marcus M. Zimmerman**
**949 Ryan Street, Suite 110**
**Lake Charles, Louisiana  70601**
**(337) 474-1644**
**Counsel for Plaintiff/Appellant:**
  **Joseph Demarest**


**Jeremy N. Morrow**
**Jennifer M. Ardoin**
**Neuner Pate**
**One Petroleum Center, Suite 200**
**1001 West Pinhook Road**
**Lafayette, Louisiana  70503**
**(337) 237-7000**
**Counsel for Defendants/Appellees:**
  **NI Welding Supply, LLC**
  **The Gray Insurance Company**

**FITZGERALD, Judge.**

The issue here is whether the workers' compensation judge (WCJ) manifestly erred in denying compensation benefits.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Joseph Demarest, was formerly employed by NI Welding Supply LLC. Joseph alleges that he hurt his back in the course of employment on July 25, 2019. Two weeks later, he filed a disputed claim for compensation against NI Welding and its insurer, The Gray Insurance Company. Defendants reconvened, claiming that Joseph willfully made false statements for the purpose of obtaining compensation benefits.

Trial was held in June 2021. Many months later, in February 2022, the WCJ issued a final judgment with accompanying written reasons. In essence, the WCJ denied all claims. Joseph appealed.

On appeal, Joseph asserts the following assignments of error:

1. The WCJ committed manifest error in finding that [Joseph] failed to meet his burden of proving that he suffered a compensable work-related accident to his lower back in the mid-morning of July 25, 2019.

2. The WCJ committed manifest error in failing to award [Joseph] weekly temporary total disability benefits (TTD indemnity) from after his last day of work, August 6, 2019, with legal/judicial interest on the past due indemnity benefits.

3. The WCJ committed manifest error in failing to award [Joseph] medical benefits.

4. The WCJ committed manifest error in failing to award [Joseph] penalties and attorney fees.

5. The WCJ committed manifest error in failing to award [Joseph] reimbursement of litigation expenses.

## LAW AND ANALYSIS

The manifest error standard of review is the correct standard to be applied by the appellate court in workers' compensation cases. *Dean v. Southmark Constr*., 03-1051 (La 7/6/04), 879 So.2d 112. The WCJ's findings will not be set aside absent a showing that they are clearly wrong. *Alexander v. Pellerin Marble & Granite*, 93-1698 (La. 1/14/94), 630 So.2d 706. "The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Blake v. Turner Indus. Grp., LLC*, 12-140, p. 6 (La.App. 1 Cir. 9/21/12), 111 So.3d 21, 25, *writ denied*, 12-2288 (La. 11/30/12), 103 So.3d 376.

In general, a workers' compensation claimant is entitled to compensation under La.R.S. 23:1031(A) if he "receives personal injury by accident arising out of and in the course of his employment." The claimant "must establish that the accident was work-related, that the accident caused the injury, and that the injury caused the disability." *Lenox v. Cent. La. Spokes, LLC*, 18-556, pp. 4-5 (La.App. 3 Cir. 2/13/19), 265 So.3d 834, 838. Thus, the claimant initially bears the burden of proving that an accident occurred on the job and that he sustained an injury. *Id*. The claimant must then prove a causal connection between the accident and the resulting disability. *Id*.

As explained in *Lenox*, 265 So.3d at 838 (citations omitted):

> Even if the employee suffered from a pre-existing medical condition, he may still meet his burden of proof of causation if he proves that the reported accident aggravated, accelerated, or combined with the pre-existing condition to produce a compensable disability. He may be aided in meeting the foregoing burden by a presumption of causation, if he can prove that before the accident he had not manifested disabling symptoms, that such symptoms commenced with the accident and manifested themselves thereafter, and that either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and onset of the disabling symptoms.

2

In his first assignment of error, Joseph contends that the WCJ manifestly erred in finding that he failed to meet his burden of proving that he suffered a compensable work-related accident to his lower back on July 25, 2019.

As stated by the WCJ, Joseph "failed to prove by a preponderance of evidence that an injury arising out of and in the course of his employment which was causally related to his work has occurred." The WCJ's finding was based on conflicting evidence. A summary of the record evidence is set forth below.

At trial, Joseph testified that he worked for NI Welding as a commercial driver for approximately seventeen years. In addition to driving, his job duties included ordering cylinder tanks, picking up the tanks from one location and delivering them to another, and filling the tanks with different gases and delivering them to customers. Joseph's supervisor was Gil Arabie II.

Joseph testified that on the day of his injury, he went to a facility operated by Targa, a customer, where he was supposed to pick up one empty helium tank. Yet the delivery ticket shows that Joseph was there to retrieve thirteen tanks, including the empty helium tank; and this was confirmed by the testimony of his supervisor, Gil, at trial. Joseph also testified that the empty helium tank weighed approximately 150 pounds and was tan or dark brown. In contrast, Gil testified that all helium tanks are yellow.

Joseph then explained that while he was at the Targa facility, he was assisted by one of its employees: an unnamed white male who was in his forties. Joseph further explained that he picked up the bottom of the cylinder tank while the Targa employee held the top of it, and together they pulled the tank out of the rocks and placed it upon the liftgate of Joseph's work truck, which was approximately ten feet away. By contrast, Gil testified that all NI Welding employees, including Joseph,

3

are prohibited from eliciting the help of nonemployees due to liability and safety concerns. Gil noted that Joseph could have rolled the empty cylinder tank to the liftgate rather than asking a customer's employee to help pick it up.

Nevertheless, Joseph testified that after the cylinder tank was secured in the truck bed, he told the Targa employee that he had injured his back. Yet Gil testified that NI Welding never received any documentation from Targa about the alleged accident. Moreover, during Joseph's deposition, he testified that the Targa employee signed the delivery ticket after the job was finished. But Gil disputed this at trial, explaining that the delivery ticket had not been signed by any Targa employee. And the delivery ticket itself, which was admitted into evidence, confirms Gil's testimony.

Next, Joseph testified that immediately after the accident, he returned to NI Welding and told Gil what had happened: that he was involved in an accident, that he suffered a back injury, and that he needed to see a doctor. Gil, in turn, testified that Joseph never told him about an injury or accident on July 25, 2019. Instead, Joseph told him that he needed to leave to see a doctor. Gil explained that he did not pry into the reason for the doctor visit out of respect for Joseph's privacy, especially since Joseph did not complain of a work-related injury and there were other employees who could cover for him. Gil testified that he first received notice of the alleged accident when NI Welding was served with Joseph's disputed claim.

Gil was then asked about company protocols for employee accidents. According to Gil, when a work-related accident is reported, company policy involves completing an accident report, notifying general counsel, and drug testing the injured employee. None of this happened in this instance. By contrast, accident reports were prepared in 2005 and 2015 for previous work-related injuries sustained by Joseph.

Thomas Gary, another WI Welding employee, also testified at trial. Thomas and Joseph were co-workers and friends. According to Thomas, Joseph never mentioned that he had a work-related accident or sustained a back injury.

In addition to the witness testimony, numerous medical records were admitted into evidence. For example, the medical records of Dr. William Lowry dated July 26, 2019 (one day after the incident), state that Joseph "is here for a recheck of low back pain. He denies any injury or trauma, but says he has been doing some heavy lifting at work and felt that has increase[d] his pain. Says he has had pain since 2018." But at trial, Joseph testified that Dr. Lowry's records were incorrect. Regardless, Dr. Lowry excused Joseph from work until July 31, 2019.

Joseph testified that he returned to work on July 31, 2019, but the pain grew worse causing him to return to Dr. Lowry the very next day. And this time, Dr. Lowry excused Joseph from work until August 5, 2019. Dr. Lowry also ordered an MRI. Thereafter, Joseph worked on August 5 and August 6, 2019. Gil testified that Joseph performed all work duties without restrictions on those days.

The record contains two texts messages from Joseph to Gil. In the first text message, which is dated August 6, 2019, Joseph states that his MRI results are bad and that he would be seeing Dr. Lowry the following day. In the second text message, which is dated August 7, 2019, Joseph states that Dr. Lowry has excused him from work until September 5, 2019. But neither text message states that his injuries were caused by a work-related accident.

The record also contains Joseph's request for accommodation plan dated August 7, 2019, along with Dr. Lowry's corresponding physician information sheet. Therein, Dr. Lowry states that Joseph's job duties should be limited to operating a motor vehicle. In response, on August 12, 2019, NI Welding agreed to this

accommodation. Yet the next day, NI Welding received an amended physician information sheet from Dr. Lowry, notifying that even driving is too much.

As stated above, Joseph filed his disputed claim for compensation on August 7, 2019, which is the same day that NI Welding received Joseph's first request for accommodation. NI Welding contends that this is when it was first notified of Joseph's alleged work-related accident and injury.

The record also contains the examination report of Dr. Clark Gunderson dated May 21, 2020. In this report, Dr. Gunderson states that he examined Joseph on May 19, 2020, for low back pain after he "was injured in July of 2019 while lifting a 150 pound cylinder while at work." Joseph's medical history, as stated in the report, was provided by Joseph during his examination. And the report specifically refers to an October 2018 incident when Joseph "woke up one morning with lower back complaints[.]"

As to his 2018 back pain, Joseph testified at trial that he woke up experiencing back pain in October of that year. Medical records from October 25, 2018, indicate that Joseph's back pain was not related to an accident. Rather, it was acute and recurrent with no known injury. At trial, Joseph testified that he could not say that his 2018 symptoms were work related. But in his deposition, Joseph stated that his 2018 back pain was work-related because it started while he was at work.

In summary, there are two permissible views of the evidence. The WCJ believed Defendants' version, finding that Joseph did not prove that his back symptoms were caused or aggravated by a work-related accident on July 25, 2019. "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable."

*Rosell v. ESCO*, 549 So.2d 840, 845 (La.1989). And when two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id*.

In the end, the WCJ did not manifestly err in finding that Joseph failed to meet his burden of proof as to causation. Consequently, Joseph's remaining assignments of error are now moot.

## DISPOSITION

For the above reasons, the judgment of the workers' compensation judge is affirmed. All costs of this appeal are assessed to Joseph Demarest.

**AFFIRMED.**